Elizabeth **WHEELER,** George **Braley, Frances Laird, Dorothy Paquet, Robert Clark, and Barbara Hall, June Clough, Plaintiff-Intervenor,**

v.

Richard S. **SCHWEIKER, Secretary of Health and Human Services, and Ted Allen, Administrator of the Vermont Disability Determination Agency.**

Civ. A. No. 81–376.

United States District Court,
D. Vermont.

Sept. 14, 1982.

John P. Wesley, Richard H. Munzing, Vermont Legal Aid, Inc., Springfield, Vt., Catharyna R. Kerr, Vermont Legal Aid, Inc., St. Albans, Vt., for plaintiff-intervenor.

George W. F. Cook, U. S. Atty., D. Vt., Holly K. Harris, Asst. U. S. Atty., Rutland, Vt., for defendant Schweiker.

John J. Easton, Atty. Gen., State of Vt., Burlington, Vt., Steven B. McLeod, Asst. Atty. Gen., Waterbury, Vt., for defendant Allen.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

This case challenges the legality of the standards that the Secretary of Health and Human Services and the Administrator of the Vermont Disability Determination Agency (DDA) use in determining whether to terminate Supplemental Social Security (SSI) benefits and Vermont supplementary assistance disability benefits of Vermont residents who were formerly recipients of Vermont Aid to the Disabled (AD) benefits. The plaintiffs contend that the Secretary and the Administrator of DDA have failed to apply the standards imposed under the Vermont AD plan in making termination decisions. Plaintiffs urge that this failure violates the Social Security Act and regulations promulgated pursuant to the Act, the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983 [sic]. Defendants contend that this court lacks jurisdiction, and, in any event, they do apply the standards of the Vermont AD plan. For the reasons that follow, the court holds that it has jurisdiction over the named plaintiffs' claims but lacks jurisdiction over the claims of the unnamed members of the class they seek to represent; the named plaintiffs are entitled to declaratory relief; and injunctive relief should not issue.

## BACKGROUND

All the named plaintiffs and the intervenor in this action were recipients of Vermont AD benefits as of June, 1973. All were subsequently "grandfathered" into the Title XVI program (SSI). See 42 U.S.C. § 1382c(a)(3)(E) (the "grandfather clause.") All, at one time or another, have received notice that their SSI benefits would be terminated, and all have invoked the Social Security appeals process, with varying degrees of success.

Plaintiff Elizabeth Wheeler was 30 years old at the time of the filing of the complaint. She has lived with her parents or at the Brandon Training School all her life. She suffers from developmental learning disabilities, congenital hip dislocations, epilepsy, and thyroid impairments. She first received Vermont AD benefits in October, 1972, and was "grandfathered" in 1974 into the SSI program. In October, 1981, the defendants determined that Ms. Wheeler's disability had ended in August of 1981. She appealed that decision. After the complaint in this lawsuit was filed, an administrative law judge reversed the Secretary's termination decision and reinstated her benefits.

Plaintiff George Braley was 49 years old at the time of the filing of the complaint. He is an illiterate fourth grade dropout who suffers from developmental learning disabilities and an uncontrolled seizure disorder. He received Vermont AD benefits for approximately three years before he was "grandfathered" into the SSI program in 1974. The defendants also notified Mr. Braley in October of 1981 that his disability was deemed to have ended in the preceding month of August. Plaintiff Braley's administrative appeal is now pending, while he continues to receive benefits pending the outcome of this case pursuant to this court's order dated August 11, 1982.

Plaintiff Frances Laird, 36 years old at the time of the complaint, suffers from developmental learning disabilities and back and nerve problems. She received Vermont AD benefits from the early 1960's until she was "grandfathered" into the SSI program. The defendants notified her in October of 1981 that they considered her disability ended. Her administrative appeal is pending. She, too, is receiving benefits pursuant to an interlocutory order of this court.

Plaintiff Dorothy Paquet, who was 47 years old at the time of the complaint, suffers from chronic undifferentiated schizophrenia. She first received Vermont AD benefits in 1969, and was "grandfathered" into the SSI program in 1974. The defend-

ants notified her in July of 1981 that she was no longer eligible for SSI benefits, but an administrative law judge reinstated her benefits on October 30, 1981, before this suit was filed.

Plaintiff Robert Clark was 48 years old when the complaint was filed. Mr. Clark suffers from chronic paranoid schizophrenia. He received Vermont AD benefits from about 1970 until he was "grandfathered" into the SSI program. In July of 1981, the defendants notified him that he was considered no longer disabled. An administrative law judge reinstated his benefits on November 2, 1981, prior to the institution of this lawsuit.

Plaintiff Barbara Hall, 58 years old when the complaint was filed, suffers from diverticulitis, gastric obstructions, hiatal hernia, migraines, cataracts, and constant stomach pain. She received Vermont AD benefits starting about 1971, and was "grandfathered" into the SSI program. By an undated notice sent sometime in August, 1981, the defendants notified her that she no longer qualified for benefits. Ms. Hall's administrative appeal is pending.

June Clough has been permitted to intervene in this action as a plaintiff. Ms. Clough was also a recipient of Vermont AD benefits who was "grandfathered" into the SSI program. Her problems include achondroplastic dwarfism, borderline mental retardation, and a variety of physical complaints. The defendants notified her in July of 1981 that she was no longer considered disabled. She sought administrative review. At the initial stage of review, an administrative law judge upheld the Secretary's determination that she was no longer disabled.

Plaintiff-Intervenor Clough then sought temporary relief in this court to restrain the Secretary from terminating her benefits. The court found that the plaintiffs had raised serious questions going to the merits so as to make them a fair ground for litigation, Ms. Clough would suffer irreparable harm if her benefits were terminated, and the balance of hardships inclined decidedly in her favor. Accordingly, by order dated

May 13, 1982, the court ordered the Secretary to reinstate her SSI benefits for the month of May and to continue to pay her SSI benefits until the court heard the defendants' motion to dismiss. Subsequently, by order dated June 17, 1982, the court expanded the temporary relief to reinstate Plaintiff Laird's SSI benefits for May and June, and to continue to pay benefits to Ms. Clough and Ms. Laird until further order. Plaintiff-Intervenor Clough's benefits have since been reinstated by the Secretary on administrative review.

By order dated August 11, 1982, the court expanded the temporary relief to reinstate Plaintiff Braley's SSI benefits. The Secretary moved to stay and vacate the order for this temporary relief. The motion for a stay was granted pending a hearing. After an evidentiary hearing on August 27, 1982, the motion to vacate was denied.

## DISCUSSION

### I. *Jurisdiction*

■ In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court analyzed the jurisdictional preconditions for judicial review under 42 U.S.C. § 405(g). "On its face § 405(g) . . . bars judicial review of any denial of a claim of disability benefits until after a 'final decision' by the Secretary after a 'hearing.'" *Id.,* 424 U.S. at 328, 96 S.Ct. at 899. The Court held this condition consists of two elements, one of which can be waived. The nonwaivable element is that a claim for benefits must have been presented to the Secretary. "Absent such a claim there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute." *Id.* The waivable element is the exhaustion of the administrative remedies provided by the Secretary.

■ All the named plaintiffs have filed claims for benefits with the Secretary. Plaintiffs Wheeler, Paquet, Clark, and Clough eventually received favorable decisions on their claims, reversing earlier decisions to terminate their benefits. Plaintiffs Paquet and Clark received favorable deci-

sions before the complaint in this action was filed. The defendants contend that this renders their claims moot. However there is no assurance that these claimants' files will not be "diaried" for periodic review. *Cf. Ellis v. Blum,* 643 F.2d 68, 83 n. 16 (2d Cir. 1981) (where there were such assurances, case would have been moot but for damages claim). To the contrary, Plaintiffs Paquet and Clark face defendants' "continuing disability investigation." Since the inception of this action, these plaintiffs have had a continuing controversy with the defendants. They sought review within the sixty-day period provided by § 405(g). Though they present the apparent anomaly of seeking review of decisions favorable to themselves, both this court and the Second Circuit Court of Appeals have recognized that jurisdiction under § 405(g) may lie to review a decision of the Secretary favorable to the claimant where the claimant challenges the standards applied during the determination process. *Jones v. Califano,* 576 F.2d 12, 18 (2d Cir. 1978); *Smith v. Harris,* No. 79–244, slip op. at 5 (D.Vt. Dec. 15, 1980).[1]

■ As for the waivable element of jurisdiction under § 405(g), it is established that administrative remedies need not be exhausted where the claimant presents a "colorable" constitutional claim. *Mathews v. Eldridge, supra,* 424 U.S. at 330–32, 96 S.Ct. at 900–01; *Jones v. Califano, supra,* 576

F.2d at 18. Exhaustion serves little purpose where a constitutional claim is presented:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. Plainly these purposes have been served once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine .... Once a benefit applicant has presented his or her claim at a sufficiently high level of review to satisfy the Secretary's administrative needs, further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest.

*Weinberger v. Salfi,* 422 U.S. 749, 765–66, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (citation omitted).

The defendants contend that to invoke either mandamus jurisdiction or § 405(g) jurisdiction here without requiring administrative exhaustion would sacrifice the agency's needs and prevent the Secretary from considering the constitutional questions as-

---

1. In oral argument, counsel for the defendant Schweiker called the court's attention to a dictum in *Ellis v. Blum, supra,* 643 F.2d at 77: "No case of which we are aware has gone so far as to find § 405(g) jurisdiction where no decision to terminate benefits had yet been made, and we would be reluctant to blaze the trail." In an accompanying footnote, *id.* n. 10, the court clearly indicated that its comment was dictum: "Even if we were to find jurisdiction under § 405(g), we might still be obliged to consider the possibility of mandamus jurisdiction...." *See also id.* at 78: "Fortunately, however, we need not decide whether jurisdiction over the Secretary exists under § 405(g) or § 1331, since we are satisfied that jurisdiction is provided by 28 U.S.C. § 1361...." The court in *Ellis* did not cite *Jones v. Califano, supra,* a decision which held § 405(g) jurisdiction existed where there had been no decision to terminate benefits. In *Jones,* there was no question

that the plaintiffs were entitled to benefits. The issue revolved around the proper calculation of benefits. Despite the absence of any termination decision, the court held that § 405(g) jurisdiction was proper. *Id.,* 576 F.2d at 17–18.

Moreover, here the Secretary actually terminated the benefits of Plaintiffs Paquet and Clark, though those termination decisions were later reversed by administrative law judges. In *Ellis,* all that had taken place was the giving of a series of pretermination notices inviting the claimant to submit evidence within ten days or else face termination. The Secretary revoked all but the last of those notices. The claimant then filed suit. *Ellis, supra,* 643 F.2d at 71–72. Unlike *Ellis,* then, this is not a case where no decision to terminate benefits had ever been made. There were decisions to terminate the benefits of all of the named plaintiffs in this case.

sociated with individual claims. But it is clear to this court that the defendants have adopted a final position with respect to the fundamental legal issues in this case. The firmness of the defendants' position is evidenced not only in their pleadings and answers to interrogatories in this case, but also in the Secretary's "ruling of non-acquiescence" in *Finnegan v. Matthews* [*sic*],[2] 641 F.2d 1340 (9th Cir. 1981).

The court notes that the constitutional claim advanced in this action is not clearly substantial. Plaintiffs contend that the defendants' failure to apply the proper standards to termination of disability benefits arbitrarily and capriciously deprived the plaintiffs of their rights under the due process clauses of the Fifth and Fourteenth Amendments to the Constitution. Plaintiffs do not enlarge upon this allegation; they devote nearly all of their oral and written argument to the statutory issues in the case. There is no serious allegation that the plaintiffs have been deprived of a meaningful opportunity to challenge the standards used by the defendants. The allegation is simply that those standards are wrong. Not every misapplication of the law rises to the level of a violation of due process. And, while a claimant need not ultimately prevail on a constitutional claim for it to be "colorable," a "colorable" consti-

tutional claim should have more substance than a mere allegation.[3]

The court holds that the waivable element of jurisdiction under § 405(g) has been relinquished for the reason that the Secretary has taken a firm and final position on the statutory issues in the case. To require administrative exhaustion in this case would serve no useful purpose and would result in the same waste of administrative resources as with a more substantial constitutional claim. *Cf. Weinberger v. Salfi, supra,* 422 U.S. at 765–66, 95 S.Ct. at 2467. As the Third Circuit held in *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3d Cir. 1977), *cited with approval in Jones v. Califano, supra,* 576 F.2d at 19 and n. 11:

> Justice Rehnquist's reasoning [in *Salfi, supra*] about the inutility of exhausting administrative remedies on a legal issue on which the Secretary has had ample opportunity to take a definitive position, and indeed has done so, applies equally to multiple claimants presenting an identical legal issue. Requiring multiple exhaustion on the same issue would involve the same "commitment of administrative resources unsupported by any administrative or judicial interest" that Justice Rehnquist so aptly condemned in *Salfi.*

2. While former H.E.W. Secretary F. David Mathews' name is misspelled in the caption of the case, the court will refer to the case name as it appears in 641 F.2d, "*Finnegan v. Matthews.*"

3. The constitutional claim here is not as "colorable" as in the cases cited by the plaintiffs. In *Mathews v. Eldridge, supra,* the essence of the case was the plaintiff's claim that a pretermination hearing was a requirement of procedural due process. In *Jones v. Califano, supra,* claimants who did not appeal their benefit calculations were in effect subject to a rule of calculation different from that applied to benefits for those who appealed the initial calculation. The Second Circuit held that under the circumstances of the case, where the Secretary consistently refused to follow the rulings of his own Appeals Council, plaintiffs had raised colorable questions of denial of equal protection and of due process. *Id.,* 576 F.2d at 18. Moreover, the court held that there was a colorable claim under the Supremacy Clause. *Id.*

In *Spear v. Harris,* No. 80–143, slip op. at 5–7 (D.Vt. July 31, 1980) and *Aldrich v. Schweiker,* No. 80–279, slip op. at 15 (D.Vt. April 14, 1982), Judge Coffrin suggested that, as in *Jones,* the Secretary's persistent failure to follow well-established legal standards created an inequality between "those with the temerity to request administrative review" and those without such temerity, and that inequality raised a colorable constitutional claim. *Spear, supra,* slip op. at 7; *Aldrich, supra,* slip op. at 15. Here, by contrast, there is no showing that administrative law judges have disagreed regularly with the position of the Secretary, or that the Secretary's position is contrary to the precedents of this Circuit.

Finally, in *Smith v. Harris, supra,* the plaintiffs contended that the Secretary put claimants through an "administrative loop" that allegedly violated procedural due process. There is no serious contention here that the procedures employed by the Secretary are constitutionally deficient.

Resolution of the issue in a single judicial proceeding conserves both administrative and judicial resources.

. . . .

The only facial difference between *Eldridge* and the instant case is that in *Eldridge* the plaintiff's challenge was a constitutional one, while here it is statutory. *Salfi* teaches us that if the legal issue is constitutional, since the administrative agency cannot decide that issue, no exhaustion is required. Where the legal issue is statutory, however, the agency does have authority to decide it, subject of course to judicial review. The test for exhaustion of a statutory issue in an individual case, we believe, should be whether the Secretary has taken a final position on that issue. In the class context the test should be no different.

*Liberty Alliance, supra,* 568 F.2d at 345–46 (citations omitted). *See also Morrell v. Harris,* 505 F.Supp. 1063, 1066–67 (E.D.Pa. 1981); *Reichenthal v. Harris,* 492 F.Supp. 637, 642 (E.D.N.Y.1980) ("Exhaustion of administrative remedies may be waived by the Secretary . . . by the adoption of a 'final' position before completion of the entire administrative review process. . . ."). In sum, the Secretary has, in this lawsuit and by his ruling of non-acquiescence in *Finnegan v. Matthews, supra,* taken a final position on the statutory issues in the case; thus administrative exhaustion has been waived.

■ While the named plaintiffs have established jurisdiction under § 405(g) for their own claims, they have not established the jurisdictional predicate necessary for a class action. The plaintiffs seek to represent a class consisting of:

All persons who were "grandfathered" from the Vermont Aid to the Disabled (AD) Program into automatic eligibility for Supplemental Security Income (SSI) and/or Vermont SSI Supplementary assistance benefits and who have been, or will be, threatened with termination from those benefits without the proper consideration of potential continuing eligibility under the AD disability criteria in effect for October 1972.

Complaint, ¶ 40. As to this class, there has been no showing that the nonwaivable element of jurisdiction under § 405(g)—the filing of a claim—has been satisfied. The Court in *Weinberger v. Salfi, supra,* held that there was no § 405(g) jurisdiction over unnamed class members because the plaintiffs in that case had not alleged that the unnamed class members had presented their claims to the Secretary. *Id.,* 422 U.S. at 764, 95 S.Ct. at 2466. While *Salfi* involved the initial consideration of applications for benefits, *Mathews v. Eldridge, supra,* makes it clear that the same requirement applies to termination decisions:

Eldridge has fulfilled this crucial prerequisite [*i.e.,* presenting a claim]. Through his answers to the state agency questionnaire, and his letter in response to the tentative determination that his disability had ceased, he specifically presented the claim that his benefits should not be terminated because he was still disabled.

*Id.,* 424 U.S. at 329, 96 S.Ct. at 900. Because there is no allegation here that absent class members have presented their claims to the Secretary, that "crucial prerequisite" is missing. *Cf. Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (court has discretion to certify a class under § 405(g) only if it has jurisdiction over each class member).

Nor is mandamus jurisdiction proper here. The Second Circuit held in *Ellis v. Blum, supra,* that "[42 U.S.C.] § 405(h) does not preclude assertion of [28 U.S.C.] § 1361 jurisdiction over claims essentially procedural in nature." *Id.,* 643 F.2d at 82 (footnote omitted). At issue in *Ellis* was the propriety of the Secretary's procedures for giving Title II disability benefits recipients notice of the termination of their benefits. Other Second Circuit cases finding mandamus jurisdiction under § 1361 proper have also involved matters that clearly fell into the category of procedure rather than substance. *Sharpe v. Harris,* 621 F.2d 530, 532 (2d Cir. 1980) (plaintiffs alleged the illegality of the Secretary's delays in conducting SSI eligibility hearings, issuing decisions, and commencing payments); *Barnett v.*

*Califano,* 580 F.2d 28, 31 (2d Cir. 1978) (plaintiffs alleged delays in SSI hearings process); *White v. Mathews,* 559 F.2d 852, 856 (2d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978) (plaintiff alleged delays in conducting Title II eligibility hearings); *Frost v. Weinberger,* 515 F.2d 57, 62 (2d Cir. 1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976) (plaintiffs challenged the Secretary's failure to provide an evidentiary hearing before reducing survivors' benefits).

  In *Aldrich v. Schweiker,* No. 80–279 (D.Vt. April 14, 1982), Judge Coffrin held that § 1361 jurisdiction was proper in a case challenging certain eligibility standards applied in both initial determinations and continuing eligibility review under Titles II and XVI of the Social Security Act. While Judge Coffrin recognized that the plaintiffs' claim did "not readily appear to be 'essentially procedural in nature,' " *id.,* slip op. at 15, he concluded that their claim was " 'procedural' in the sense that, rather than being for recovery of benefits, it [was] for adjustment of the rules for determining whether an individual is entitled to benefits." *Id.* at 16. It should be noted, however, that in *Aldrich* the plaintiffs contended that "the Secretary and DDS are required to apply the same standards as the Second Circuit Court of Appeals and this court apply, that each refuses to do so, and that therefore plaintiffs are subjected to needless administrative and judicial review." *Id.* at 5. By contrast, here there is no allegation that the defendants persist in disregarding precedents of this court or of the Second Circuit. There is no "clear duty to act," *see Ellis v. Blum, supra,* 643 F.2d at 81, that has previously been articulated. In order for mandamus to issue, "three elements must co-exist: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other remedy available." *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct.

1555, 36 L.Ed.2d 310 (1973). Since these criteria are not satisfied here, this court declines to expand the holding in *Aldrich* to govern the novel statutory issues present in this case, and the court holds that mandamus jurisdiction does not exist over the claims of unnamed class members.

  The court has pendent party jurisdiction over defendant Allen. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.,* 441 F.2d 627, 629–30 (2d Cir. 1971) (Friendly, J.). As in *Smith v. Harris, supra,* slip op. at 6–7, the claims against the federal and state defendants here are identical. "To try these claims separately would involve needless litigation." *Id.* at 7.

## II. *The Merits*

The statute that the court is called upon to interpret, the "grandfather clause," is 42 U.S.C. § 1382c(a)(3)(E). That statute provides as follows:

> *Notwithstanding the provisions of subparagraphs (A) through (D)* [of § 1382c(a)(3), setting forth the uniform federal eligibility criteria for SSI benefits], an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), *so long as he is continuously disabled as so defined.*

(emphasis added).

The parties' disagreement centers on what the definition of disability under the old Vermont AD plan entails. The defendants contend that the Vermont AD plan criteria can be completely comprehended by reference to § 6051 of the Secretary's Programs Operation Manual System (POMS).[4]

---

**4.** The definition of "Permanent and Total Disability" contained in § 6051 of POMS is as follows:

    2320. *Disability*

Since these criteria, defendants argue, are stricter than the current federal requirements for SSI eligibility,[5] the defendants feel free to operate without close attention to the old Vermont AD plan, and the evidence clearly indicates that in practice eligibility determinations of "grandfatherees" are made solely on the basis of what the defendants contend are the more lenient current federal requirements for SSI benefits. *See, e.g.,* Defendant Schweiker's Answer to Plaintiffs' Interrogatory 16:

> The procedures for review of the continued eligibility of nonrollback conversions [*i.e.,* "grandfatherees"] are the same as the procedures for review of the continued eligibility of Title XVI recipients under the Act. If a cessation determination is made pursuant to a Title XVI review then an automatic state standard cessation is made because the Vermont State plan standard required for disabili-

ty is more restrictive than the Title XVI standard for determination.

Plaintiffs urge that the criteria for eligibility under the old Vermont AD plan, contained in § 6051 of POMS, can only be properly understood in the light of implementing regulations, Vermont Human Service Board opinions, decisions by the Vermont Supreme Court, and the like—in short, the whole gamut of explanatory material that a court might ordinarily look to in order to interpret a statute. So understood, plaintiffs contend, the Vermont AD plan standards were considerably more liberal than the current federal SSI eligibility requirements.

Plaintiffs advance a number of specific respects in which the Vermont AD plan allegedly differed from the current federal criteria. First, they contend it was less abstract and more concerned with a claimant's realistic circumstances. They urge

> "Permanent and total" disability means that the individual has some permanent physical or mental impairment, disease or loss that substantially precludes him from engaging in useful occupations within his competence, such as holding a job or homemaking. Such impairments may be obvious, such as loss of a limb, or discernable only through medical examination.
>
> Disability as an eligibility factor is not confined to complete helplessness; on the other hand, it is recognized that, with assistance, services and training, disabled individuals may become self-supporting.
>
> 2321. *Definitions*
> 2321.1 *Permanent*
> "Permanent" disability refers to a physiological, anatomical or emotional impairment, verifiable by medical findings, of major importance, which is expected to continue throughout the individual's lifetime and is not likely to improve.
> 2321.2 *Total*
> "Total" disability is determined with reference to the ability of the individual to perform activities necessary to carry out responsibilities of employment or homemaking. This involves assessment of the individual's probable functioning in his particular situation in terms of his impairment; no time factor is involved.
> 2321.3 *Substantially Precludes*
> "Substantially precludes" refers to the extent to which a permanent impairment leaves an individual unable to engage in the necessary activities of a "useful occupation" well enough and with sufficient regularity to re-

> ceive regular payment or to carry homemaking responsibilities on a continuing basis.
> 2321.4 *Useful Occupations*
> A "useful occupation," in general, means productive activity which adds to economic wealth by producing goods or services to which the public attaches a monetary value. It demands the time and attention of the doer for the ultimate benefit of others.
>
> Hobbies, occupational therapy, training activities, and similar remunerative activities which may be engaged in by handicapped individuals are not considered "useful occupations" in this context.
> 2321.5 *Homemaking*
> "Homemaking" as an occupation arises from the individual's own social situation as distinguished from the domestic, maid, or housekeeper hired to perform domestic duties in a home maintained by others. It requires the ability to carry home-management and decision making responsibilities and to provide essential services within the home for at least one person in addition to one's self on a sufficiently regular and predictable basis to meet the responsibility involved.

These definitions were taken, substantially verbatim, from §§ 2320 *et seq.* of the Vermont Welfare Assistance Manual, as in effect on October 1, 1972.

5. The statutory definition of disability is found at 42 U.S.C. § 1382c(a)(3)(A)–(D). The Secretary's regulations further elucidating that definition are located at 20 C.F.R. Part 404.

that it required a showing of improvement before benefits could be terminated. It allegedly required an assessment of actual employment opportunities in the claimant's locality, and of ability, given the claimant's individual situation, to engage in productive activity with sufficient regularity to receive regular payment. Finally, plaintiffs contend that the Vermont AD plan had "input" into termination decisions from "a review team consisting minimally of a licensed medical doctor, a vocational rehabilitation person, a social worker, and a psychiatrist." Complaint, ¶ 50.

Plaintiffs' final contention lacks merit. The manner in which the Vermont AD plan administrators organized their review teams was procedural only, and forms no part of a State plan definition of disability which the defendants are bound by 42 U.S.C. § 1382c(a)(3)(E) to apply to "grandfatherees." As defendants rightly point out, the adoption of the unique procedural aspects of the various State plans would be inconsistent with the evenhanded administration of the SSI program throughout the country. Congress, in creating the Supplemental Security Income program, intended to create "a single Federal program." H.R. Rep.No.93–627, 93d Cong., 1st Sess. (1973), *reprinted in* U.S.Code Cong. & Ad.News 3177, 3183. To require each SSI grandfatheree's continuing eligibility for benefits to be judged according to the State procedures under which he or she was first found disabled would result in fifty-one separate SSI programs. In our mobile society, the Secretary could be burdened with administering all or most of these programs side-by-side even within one state, to evaluate "grandfatherees" who have changed their state of residence since first found disabled. Nothing in 42 U.S.C. § 1382c(a)(3)(E) or its legislative history compels this result.

The plaintiffs' other contentions are more difficult to evaluate. As the Ninth Circuit Court of Appeals noted in *Finnegan v. Matthews, supra,* "[i]t is relatively easy to locate the former state statute based on which a grandfatheree was ruled to be 'disabled;' however, even the wisdom of hindsight will often be insufficient to allow an ALJ to understand fully how a state disability standard had been routinely interpreted and applied by the relevant administrators." *Id.* at 1344 (footnote omitted). Because of the difficulty, if not impossibility, of determining whether a "grandfatheree" is "continuously disabled" under a "complete" State standard, the *Finnegan* court, speaking through Senior Circuit Judge Irving Goldberg (sitting by designation), held that the Secretary may not terminate benefits "absent a showing of previous clear and specific error or medical improvement which is sufficient to establish that an applicant is no longer 'continuously disabled as so defined.'" *Id.* at 1345 (footnote omitted).

This court has wrestled with the problems inherent in attempting to ascertain the "complete" Vermont AD plan, and concludes that the approach taken by the *Finnegan* court is the soundest means of giving meaning and content to the "grandfather clause." "The sole function of a grandfather clause is to prevent the harsh and often unfair operation of a statutory change." *Id.* at 1346. As plaintiffs correctly point out, the distinction upon which the Secretary relies for his contention that the current federal SSI eligibility criteria are more liberal than the various State plan standards for permanent and total disability—namely, that SSI only requires a disability expected to last twelve months or more, 42 U.S.C. § 1382c(a)(3)(A), while the State plans required a permanent disability—has existed since the inception of the SSI program. "If Congress had thought that this distinction alone rendered the SSI eligibility standards more liberal than the various state standards, it wouldn't have bothered to enact a grandfather clause." Plaintiffs' Memorandum in Response to Defendant Schweiker's Motion to Dismiss, dated April 22, 1982, at 15–16. In enacting the "grandfather clause," Congress must be presumed to have intended to avoid the potential "harsh side effect" of a "discontinuance of benefits to former recipients prompted solely by a change in the rules of the game and undertaken in the absence of

any improvement in their disabling condition." *Finnegan, supra,* 641 F.2d at 1346. Certainly the language of the statute—"Notwithstanding the provisions of subparagraphs (A) through (D)"—supports the inference that Congress intended to exempt "grandfatherees" from requirements which it considered might be more onerous in some respects than those in the various State plans. For the reasons so well stated by Judge Goldberg in *Finnegan,* this court agrees that Congress' intent in enacting the "grandfather clause" was to protect those who had previously qualified for State disability benefits from the burden of ever having to meet the new federal requirements. The most administratively feasible method of carrying out that Congressional mandate is to require the Secretary to show either material improvement or clear and specific error in the prior State determination.

In *Smith v. Schweiker,* No. 79–244 (D.Vt. July 28, 1982), this court held that the Secretary need not show improvement to sustain the termination of benefits of Title II or SSI recipients who qualified under the uniform federal criteria. "[O]ther ways of finding a claimant no longer disabled ... are fully consistent with the Social Security Act: if a claimant has returned to work, or if it is discovered that a claimant's condition is not as serious as originally believed, or if a claimant's unimproved impairment becomes treatable through scientific advances." *Id.,* slip op. at 10 (citations omitted). Those who have qualified under the uniform federal SSI criteria must continue to satisfy those criteria to retain their eligibility. While it has not yet been decided in this Circuit whether the claimant or the Secretary can be said to have the burden of proof in cases challenging termination decisions, see *Schauer v. Schweiker,* 675 F.2d 55, 57–59 (2d Cir. 1982), this court has concluded that a "comparative analysis involving cross-checking current data with old data is not essential" in review of decisions terminating the benefits of those who qualified under the uniform federal criteria. *Smith v. Schweiker,* No. 79–244, slip op. at 6 (D.Vt. August 30, 1982) (opinion on motion for reconsideration). In such cases, the Secretary applies current federal regulations of his own making; there should be no misunderstanding as to the standards for eligibility.

The plaintiffs in this proceeding stand differently than the beneficiaries in *Smith.* The "grandfather clause" affords them a measure of protection against the possible harsh impact on them of the enactment of the uniform federal SSI eligibility criteria. To be sure, they are not guaranteed SSI benefits for the rest of their lives. The "grandfather clause" only seeks to ensure that they will continue to receive benefits as long as they remain in a disabled condition that would have made them eligible for benefits under a State plan. The Secretary lacks the familiarity with the "complete" State plans, including "how a state disability statute had been routinely interpreted and applied by the relevant administrators *Finnegan, supra,* 641 F.2d at 1344, that he has with the federal standards. Consequently, in the "grandfatheree" context, a requirement of a showing of improvement or clear and specific error in the prior state proceeding fulfills a Congressional purpose, while it does not serve any such purpose in the review of decisions to terminate the benefits of non-"grandfatherees." This court, therefore, holds that in order for a decision to terminate the benefits of an SSI "grandfatheree" to be sustained upon review, there must be a showing of material improvement in medical or employment status or of clear and specific error in the prior state decision to grant benefits. Whether or not such a showing can be made in individual cases is a question that can only be addressed through the regular Social Security appeals process.

### III. *Relief*

Plaintiffs seek both declaratory and injunctive relief. The injunctive relief prayed for in the complaint is worded as a negative injunction. Plaintiffs request that this court

[e]nter a permanent injunction enjoining the defendants, their successors, agents and employees from making disability cessation determinations for and from stopping the payment of SSI and/or Vermont SSI Supplementary assistance disability benefits to persons who were "grandfathered" into the SSI program from the Vermont AD program and who have been continuous recipients of said benefits, without applying the proper standards of AD eligibility, as in effect in October, 1972.

The relief sought cannot be granted because the court lacks jurisdiction over the unnamed class members. Moreover, sound principles of equity jurisprudence dictate that the court not grant this injunction even as to the named plaintiffs, over whose claims the court has jurisdiction. The proposed relief would substitute a regime of court order, enforcible by contempt, for the ordinary Social Security appeals process. Should any one of the named plaintiffs feel that the Secretary had erred in "applying the proper standards," he or she could short-circuit the orderly review process provided by law, and come before this court immediately for an order to show cause why the Secretary should not be held in contempt.

The fundamental defect in the relief sought is that it seeks to direct the exercise of the Secretary's discretion. Though phrased as a negative injunction, the relief sought is essentially in the nature of a mandatory injunction to compel the Secretary to apply the proper standards. The equitable considerations that govern here are essentially the same as in *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958), in which the plaintiffs sought a mandatory injunction to compel the defendant to set new tolls:

> The principle at stake is no different than if mandamus were sought—a remedy long restricted, in the main, to situations where ministerial duties of a nondiscretionary nature are involved. Where the matter is peradventure clear, where the agency is clearly derelict in failing to act,

where the inaction or action turns on a mistake of law, then judicial relief is often available.... But where the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms, the very construction of the statute is a distinct and profound exercise of discretion.

*Id.* at 318, 78 S.Ct. at 757 (citations omitted).

Because granting injunctive relief here would interfere with the orderly workings of the Social Security appeals process and might require the court to intrude prematurely into a domain in which the Secretary has discretion, the court declines to issue an injunction. The court concludes that declaratory relief would not be nearly so intrusive. Should narrow, specific injunctive relief of some sort later appear proper, 28 U.S.C. § 2202 may provide the plaintiffs recourse.

The temporary relief the court has granted Plaintiffs Braley and Laird shall remain effective up to the date of this order, but any prospective reinstatement of their benefits must depend on their success in pursuing the ordinary avenues of appeal provided by the Social Security system.

Defendant Schweiker's motion to dismiss is hereby DENIED. The plaintiffs' motion for summary judgment is GRANTED. It is the final judgment of this court, and it is hereby DECLARED, that 42 U.S.C. § 1382c(a)(3)(E) requires that for the termination of SSI benefits to a "grandfatheree" from the Vermont AD plan to be sustained upon review, there must be a material improvement in his or her medical or employment status or a showing of clear and specific error in the prior state proceeding.

It is so ORDERED.