Elizabeth WHEELER, et al.,
Plaintiffs-Appellees-Cross-Appellants,

v.

Margaret M. HECKLER, Secretary of the United States Department of Health and Human Services, et al., Defendants-Appellants-Cross-Appellees.

Nos. 1044, 1377, Dockets 82–6310, 82–6326 and 82–6328.

United States Court of Appeals, Second Circuit.

Argued April 28, 1983.

Decided Oct. 11, 1983.

Rehearing Denied Dec. 2, 1983.

Howard S. Scher, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Robert S. Greenspan, Washington, D.C., and George W.F. Cook, U.S. Atty., Burlington, Vt., on the brief), for defendant-appellant-cross-appellee Heckler.

John P. Wesley, Vermont Legal Aid, Inc., Springfield, Vt., for plaintiffs-appellees-cross-appellants.

Before NEWMAN and PRATT, Circuit Judges, and METZNER, District Judge.*

NEWMAN, Circuit Judge:

This is an appeal from the September 14, 1982, judgment of the District Court for the District of Vermont (James S. Holden, then Chief Judge) in a suit challenging the standards used for terminating disability benefits of those previously found to have been entitled to such benefits under the provisions of Vermont law. 547 F.Supp. 599 (D.Vt.1982). The suit was brought as a class action on behalf of Vermont recipients of disability benefits against federal and Vermont officials with responsibilities for administering the disability program. The federal defendants appeal from Judge Holden's ruling that modifies the standard for terminating benefits, and plaintiffs cross-appeal from the denial of their motion for class certification. For reasons that follow, we reverse and remand with respect to the

* The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation.

appeal and affirm with respect to the cross-appeal.

## I.

The issues can best be understood against the framework of past and current provisions of the federal-state disability benefits program. In 1950 Congress enacted Title XIV of the Social Security Act, 42 U.S.C. § 1351 *et seq.* (1970), repealed by P.L. 92–603, Title III, § 303(a)(b), 86 Stat. 1484 (1972), to provide federal grants to state-administered disability programs assisting "needy individuals eighteen years of age and older who are permanently and totally disabled." Title XIV set no national standards for defining or determining disability; each state was given latitude to establish its own criteria.

In October 1972, in an effort to improve and make uniform these federally supported state disability programs, Congress repealed Title XIV and replaced it with a "Supplemental Security Income for Aged, Blind, and Disabled" program (SSI). 42 U.S.C. § 1381 *et seq.* (1976). The new program, known as Title XVI, established a national standard for determining disability:

> An individual shall be considered to be disabled ... if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A) (1976). To protect those previously determined to be disabled in states with eligibility criteria more liberal than the new national standard, Congress enacted a "grandfather clause":

> Notwithstanding the provisions of subparagraphs (A) through (D), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under Subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid

under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined. 42 U.S.C. § 1382c(a)(3)(E). Thus, a claimant can qualify for disability benefits under Title XVI by meeting the federal criteria for eligibility, or, if "grandfathered" into the program, by being totally and permanently disabled as defined under a state plan in effect in October 1972.

■ Once qualified under either standard, a claimant will continue to receive benefits so long as the underlying disability continues. The Social Security Act authorizes the Secretary of Health and Human Services to conduct periodic eligibility redeterminations, 42 U.S.C. § 421(c) (1976), and amendments adopted in 1980 require eligibility reviews at least once every three years. 42 U.S.C. § 421(h) (Supp. V 1981). These continuing disability evaluations, whether conducted by the federal agency or by various state agencies under contract with SSA, are governed by the procedural requirements and substantive standards adopted by Congress, as implemented by SSA's regulations. In the case of "grandfatherees" both the Act and regulations thereunder require the examining agency to find disabled a beneficiary who meets either the state criteria under which disability was originally determined or the new federal standard. 42 U.S.C. § 1382c (a)(3)(E), 20 C.F.R. §§ 416.907, 416.-994(e) (1983). Only if the beneficiary fails to meet either standard are disability benefits subject to termination.

The seven named plaintiffs and one named intervenor-plaintiff in this action had originally been found eligible for permanent disability under Vermont's plan for Aid to the Disabled (AD), a state program funded under Title XIV, and were recipients of disability benefits as of June 1973. Upon the repeal of Title XIV, plaintiffs were converted to the SSI program as "grandfatherees" pursuant to section 1382c(a)(3)(E). In 1981, the Disability Determination Services Division (DDSD) of the Vermont Department of Social Welfare,

acting under contract with SSA, reviewed plaintiffs' conditions to determine whether they remained eligible for continued receipt of SSI benefits. *See* 42 U.S.C. § 421(h) (Supp. V 1981); 20 C.F.R. §§ 404.1590—404.1598, 416.994 (1983).

In conducting these reviews, DDSD applied only the federal standard because in the defendants' view, the federal standard is more generous than the prior state standard. Finding plaintiffs unable to meet the federal definition of disability, DDSD, without considering whether plaintiffs continued to meet the criteria previously established by the Vermont disability plan, concluded that claimants were no longer entitled to disability benefits. Accordingly, all plaintiffs received notices from SSA that they were no longer disabled and that their benefits would be terminated.

Prior to exhausting available administrative remedies, these grandfatherees filed a class action in the District Court seeking declaratory and injunctive relief requiring SSA and DDSD, in conducting review of "grandfatheree" eligibility, to apply the standards of disability eligibility in effect in October 1972 under the Vermont AD plan.

Defendants moved to dismiss. They asserted that the district court lacked jurisdiction as no named or class plaintiffs had received a final adverse administrative decision, a prerequisite to judicial review, 42 U.S.C. § 405(g). In the alternative, SSA and DDSD urged the District Court to dismiss the complaint for failure to state a claim on which relief could be granted since defendants' use of the federal standard had in effect incorporated the old Vermont AD standards.

The District Court's decision first analyzed the intricate jurisdictional issues raised by claimants' action. On its face, section 405(g) precludes judicial review of benefit determinations absent a final decision of the Secretary made after a hearing regarding a benefit claim. Applying the Supreme Court's analysis in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), Judge Holden distinguished between the strictly jurisdictional, non-waivable requirement imposed by the statute—presenting a claim for benefits before the agency—and the waivable element—exhaustion of the administrative remedies provided by the Secretary.

▮ With respect to members of the putative class, consisting of all Vermont "grandfatherees" who had been or would be threatened with termination of benefits through failure to apply the Vermont AD standard, the District Court concluded that they had failed to satisfy the nonwaivable jurisdictional requirement imposed by the Act. 547 F.Supp. at 606. The class members had not presented to the Secretary a claim that their benefits should not have been terminated.[1]

With respect to the named plaintiffs, however, the District Court ruled that they had satisfied the threshold jurisdictional requirement since each had filed a claim for benefits after the Secretary's termination decision. *Id.* at 603. Judge Holden then rejected the argument of the federal defendants that some of the named plaintiffs had not met the non-jurisdictional requirement of exhausting all administrative remedies and that the claims of those who had exhausted were moot because they had won at the administrative level. The District

---

1. The District Court also rejected mandamus jurisdiction for the class claims, noting the absence of (1) a clear right of plaintiffs to the relief sought, (2) a plainly defined action and peremptory duty on the part of a defendant to take the action in question, and (3) the unavailability of an alternate remedy. We have no reason to question Judge Holden's refusal to assert mandamus jurisdiction. In view of the general preclusion of jurisdiction over claims for benefits imposed by section 405(h), subject to review under section 405(g), we have limited mandamus jurisdiction to those instances where plaintiffs raised "only procedural challenge, the adjudication of which will not affect the substantive question of continued entitlement to disability." *Ellis v. Blum*, 643 F.2d 68 (2d Cir.1981). The distinction carefully drawn in *Ellis* would be undermined if we accepted plaintiffs' invitation to characterize their claim as a procedural challenge calling for an adjustment in the rules for determining whether an individual is entitled to benefits.

Court found "constructive waiver" of the exhaustion requirement. Judge Holden observed that the rationale advanced by the Supreme Court in *Eldridge* for permitting review of "colorable" constitutional claims absent exhaustion was equally persuasive where, as here, the Secretary had adopted a final position on issues of statutory construction. Since it would serve no purpose to require claimants to pursue futile and costly administrative appeals before obtaining judicial review of the agency's consistent construction of its statutory mandate, the District Court ruled that the exhaustion barrier to section 405(g) judicial review had been "constructively waived." *Id.* at 604–06.

Judge Holden also ruled that those plaintiffs who had won relief at the administrative level were nonetheless entitled to judicial review. He concluded that the continual threat of disability investigations applying allegedly unlawful standards warranted judicial review of these plaintiffs' claims. *Id.* at 603–04.

Turning to the merits, the District Court first considered the Secretary's contention that in conducting continuing disability determinations of Vermont grandfatherees, SSA and its agent, DDSD, were entitled to ignore the old Vermont AD standards and rely exclusively on the federal standard because, the Secretary argued, the standard was more generous than Vermont's disability definition. The Secretary cited the less stringent durational requirement of the federal definition—that the disabling condition is expected to continue for at least twelve months rather than "throughout the individual's lifetime" as required under the Vermont standard. Plaintiffs disputed this conclusion, pointing to a number of circumstances in which claimants would fare better under the Vermont AD plan.[2] Noting

that the federal disability definition in effect since the inception of SSI had incorporated a more lenient durational requirement than state plans, Judge Holden observed that to permit SSA to ignore the entire state disability standard solely because of the durational distinction would completely eviscerate the grandfather clause. Accordingly, he rejected the Secretary's position that only the federal standard was applicable to termination decisions in Vermont. *Id.* at 607–10.

The District Court did not, however, simply grant plaintiffs' requested relief and order the Secretary, as required by the mandate of the grandfather clause and SSA's own implementing regulations, to accord grandfatherees the benefit of either the federal or state disability criteria. Instead, noting what he considered to be the "difficulty, if not impossibility" of determining the "complete" state standard, Judge Holden followed *Finnegan v. Matthews [sic]*, 641 F.2d 1340 (9th Cir.1981), and concluded that the "most administratively feasible method" of carrying out the Congressional mandate embodied in the grandfather clause was to require the Secretary, in order to terminate a grandfatheree's benefits, to show either "material improvement" in the grandfatheree's medical condition or employability since the original determination of disability or "clear and specific error in the prior State decision." 547 F.Supp. at 610.[3] He granted the named plaintiffs a declaratory judgment incorporating this construction of the grandfather clause. *Id.* at 611.

## II.

Before reaching the merits, we confront the preliminary issue of jurisdiction. In this Court the Secretary has abandoned the

---

**2.** Plaintiffs maintained that the Vermont AD plan was more liberal than federal standards with respect to (i) severity of disability, (ii) definition of employability, and (iii) determination of emotional disability.

**3.** While under the *Finnegan* standard the Secretary could not terminate benefits if claimant's employability had materially improved but his

medical condition remained unchanged, under Judge Holden's formulation the Secretary could terminate disability benefits where claimant's employability had materially improved because of changes in the economy, rather than in his medical condition. *Compare Finnegan v. Matthews, supra,* 641 F.2d at 1344–45, *with Wheeler v. Schweiker, supra,* 547 F.Supp. at 610.

argument that the District Court lacked jurisdiction over the named plaintiffs but continues to oppose on jurisdictional grounds plaintiffs' efforts, pressed in their cross-appeal, to obtain class certification for the unnamed plaintiffs.

■ With respect to the class plaintiffs, we agree with the District Court that they failed to surmount the threshold barrier imposed by the non-waivable jurisdictional requirement of section 405(g). The District Court correctly ruled that "[a]s to this class, there has been no showing that the non-waivable element of jurisdiction under § 405(g)—the filing of a claim—has been satisfied." *Id.* at 606. We recognize that as to those class plaintiffs who have received termination notices it may be said that the Secretary has made a "decision" that is available for review. However, the requirement of presenting an administrative claim is not met simply because in the context of a continuing disability review the Secretary must act first; in order to satisfy the "presentment requirement" a claimant must take action, subsequent to the Secretary's tentative determination that disability has ceased, by "specifically present[ing] the claim that his benefits should not be terminated," *Mathews v. Eldridge, supra,* 424 U.S. at 329, 96 S.Ct. at 900. This requirement has been construed liberally, at least as to named plaintiffs. A claimant need not file a formal administrative appeal; in *Eldridge,* for example, the Court found that claimant's response to a disability questionnaire and submission of a letter contesting the termination notice satisfied the non-waivable jurisdictional requirement. Here, however, plaintiffs presented no allegations that the unnamed plaintiffs had initiated even informal communications with SSA or DDSD, either pri-

or or subsequent to receipt of a termination notice.[4]

■ Turning to the named plaintiffs, we disagree with the District Court that the claims of those who secured reinstatement of benefits at the administrative level may be adjudicated. In holding their claims justiciable, Judge Holden relied on our decision in *Jones v. Califano,* 576 F.2d 12 (2d Cir. 1978). We do not read *Jones* to signal such a broad departure from the rule that judicial review of favorable decisions is generally unavailable. The class of claimants allowed to proceed in *Jones* had been denied the benefits they sought. The named plaintiffs were permitted to represent the class, notwithstanding their success at the administrative level with respect to their own claims, because they had sought class certification prior to the granting of administrative relief, 576 F.2d at 22. In this case, however, the named plaintiffs who were successful at the administrative level secured relief prior to seeking class certification, and we see no basis for excepting their claims from the normal standards of mootness.[5] The claims of plaintiffs who prevailed at the administrative level must therefore be dismissed as moot, leaving for adjudication on the merits only the claim of plaintiffs Braley, Laird, and Hall.

■ Having finally reached the merits, we conclude that resolution of the substantive issue is fairly straightforward. The grandfather provision, section 1382c(a)(3)(E), unambiguously provides that those previously determined to be eligible for disability benefits are to remain eligible if they satisfy the substantive standards of either current federal law or the state law in force as of October 1972. We agree with Judge Holden that the prior state law option cannot be disregarded, as the Secretary

---

**4.** Even if the class members were found to have met the non-waivable presentment requirement, a substantial question would remain whether the exhaustion requirement could be deemed either met or waived. *See Smith v. Schweiker,* 709 F.2d 777 (2d Cir.1983).

**5.** This is not an instance where appellees' injury is "capable of repetition, yet evading re-

view." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). If and when the disability benefits of any plaintiff who prevailed at the administrative level are again terminated pursuant to an allegedly unlawful disability standard, administrative and judicial review of that decision will be available.

urges, simply because the Secretary regards it, on balance, as less generous to Vermont beneficiaries than the federal standard. Beneficiaries are entitled to rely on the prior state standard whenever it is more advantageous than the federal standard as applied to their particular circumstances.[6]

■ However, we do not agree with the District Court's ruling, which the plaintiffs did not seek but now embrace, that the prior state law option can be disregarded because of alleged difficulties in ascertaining the "complete" Vermont standard in force in October 1972. What appears to have concerned Judge Holden is the current unavailability of administrative decisions rendered by state officials under the 1972 Vermont disability standard. Whatever difficulties may arise from the unavailability of some administrative decisions, we see no basis for departing from the Congressional mandate that the standard of the prior state law be applied where advantageous to the claimant. The standard is set forth in the state plan and in implementing regulations. Perhaps some administrative or judicial decisions can be located to give the standard a more refined meaning. Whether or not that occurs, SSA and DDSD will simply have to do their best with the available materials, as both are quite willing to do, in endeavoring to determine whether an individual claimant remains disabled under the prior state standard. The basis for decision-making may not be as complete as one might wish, but it is not so fragmentary as to warrant rejection of the state standard in favor of the District Court's substituted standard of continued eligibility unless there was clear error in the original determination or medical improvement since that determination.

*Finnegan v. Matthews, supra,* on which the District Court relied, expressed the view that a termination standard requiring a showing of clear error in the initial eligibili-

ty determination or medical improvement since that determination was necessary to provide grandfatherees with protection against the risk that the Secretary, though applying the prior state standard, may simply reach a different conclusion than the one previously reached when disability was initially determined. 641 F.2d at 1345 n. 7. If that was Congress's concern, it could have legislated a standard of continued eligibility in the absence of clear prior error or medical improvement. Such a standard would have been difficult to administer since it would require inquiry in each case as to both the details of the claimant's condition and the regularity of the proceedings at the time of the initial disability determination. But whether or not burdensome to the Secretary (and correspondingly beneficial to the grandfatheree), such a standard, requiring extensive retrospective consideration of facts, is not the one Congress enacted. Instead, Congress preferred an assessment of only the grandfatheree's current condition, requiring a retrospective look only to ascertain the prior state standard in those situations where it was more beneficial to the claimant than the new federal standard. It is only the prior state standard, and not the claimant's disability status under that standard, that has been grandfathered.

Accordingly, with respect to the appeal, the judgment is reversed and the cause remanded with directions to dismiss the claims of the plaintiffs who prevailed at the administrative level and for further proceedings, consistent with this opinion, on the claims of plaintiffs Braley, Laird, and Hall. No costs.

---

**6.** For example, under the Vermont AD plan inability to engage in gainful employment is determined with reference to jobs available within the claimant's community, Vermont Welfare Assistance Manual § 2320 *et seq.,* while under the federal standard it is immaterial whether work "exists in the immediate area in which [claimant] lives or whether a specific job vacancy exists for him or whether he would be hired if he applied" so long as such work exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B) (1976).