**Terry R. FINNEGAN, Sr.,
Plaintiff-Appellant,**

v.

**David MATTHEWS, Secretary of Health, Education and Welfare of the United States, Defendant-Appellee.**

No. 79–4158.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1980.

Decided April 16, 1981.

Rehearing Denied June 25, 1981.

Thomas Bothwell, Clarkston, Wash., for plaintiff-appellant.

Carroll D. Gray, Spokane, Wash., for defendant-appellee.

Before GOLDBERG,* FERGUSON and BOOCHEVER, Circuit Judges.

GOLDBERG, Circuit Judge:

This case presents the novel problem of interpreting a grandfather clause authored by Congress as part of its 1972 rewriting of sections of the Social Security Act ("Act"). Defendant, the Secretary of Health, Education and Welfare (hereinafter "Secretary" or "HEW"), seeks to rely on its own regulations, written after the passage of the Act, to read the prose of congressional Magi as those of legislative Indian givers, and to interpret a wise, fair grandfather clause as a grizzly, old miser. Because we find this Scrooge-like transmogrification of the clause to be inconsistent with its plain meaning and legislative history, with subsequent intimations by the judicial readership, and with the dictates of both policy and common sense, we reject the position of the Secretary.

## I. PORTRAIT OF A GRANDFATHER: THE CLAUSE

In October, 1972, Congress repealed the categorical assistance program (Title XIV of the Social Security Act) which had provided federal grants to state-administered disability assistance programs. 42 U.S.C.A. §§ 1351–1355, Pub.L. No. 92–603, 86 Stat. 1484 § 303 (repealed 1972). At the same time, Congress established a program identified as Supplemental Security Income for Aged, Blind and Disabled ("SSI"), which became effective in January 1974. 42 U.S.C.A. §§ 1381–1383 (West 1974). Under the federally-administered SSI program, the federal government assumed the burden of providing benefits directly to those needy people who were "disabled" as defined in the Act. 42 U.S.C.A. § 1381 (West 1974).

As part of the definition of "disability" under the Act, Congress included the following "grandfather" clause:

[A]n individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State Plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined. 42 U.S.C.A. § 1382c(a)(3)(E) (Supp.1980).

The requirement that the individual be disabled for at least one month prior to July 1973 was introduced as a last minute amendment to the original provision. The purpose of this "rollback" amendment was to prevent states from transferring their welfare recipients onto the disability rolls in anticipation of the federal takeover. Those individuals who received disability aid under a state plan during December 1973 but who had not received aid under such plan for at least one month prior to July 1973— known as "rollbacks"—were subsequently classified, pursuant to agency regulations, as "presumptively disabled" and thus were eligible to receive SSI benefits until an initial determination of eligibility could be made. See 42 U.S.C.A. § 1383(a)(4)(B) (Supp.1980); 20 C.F.R. § 416.954. In contrast, the availability of federal disability benefits to those individuals who had received aid under a state plan for at least one month prior to July 1973—commonly known as "grandfatherees"—is controlled solely by the operation of the statutory grandfather clause.[1]

## II. FINNEGAN'S ACHE

On November 16, 1972 appellant Finnegan's application for state disability was approved by the state of Washington disability review board. Finnegan received benefits from the state until January 1,

---

* The Honorable Irving L. Goldberg, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. A review of the statutory scheme governing the payment of benefits to rollbacks is necessary in order to fully understand the case law in this area. *See infra*, p. 7.

1974 at which time he was converted to and began receiving benefits from the federal SSI program. Based on the time period during which he had received disability benefits pursuant to the state plan, Finnegan qualified as a grandfatheree under the Act.

In December, 1975, Finnegan received notice that his benefits would cease on the basis that his medical condition had allegedly improved and his disability had ceased. Finnegan challenged these conclusions and contested the decision to terminate his benefits. At the agency hearing, the administrative law judge ("ALJ") concluded that Finnegan's medical condition had not improved, but nevertheless found that HEW was entitled, based on agency regulations, to make an "initial determination" of Finnegan's eligibility. Reviewing the evidence presented at the hearing, and based on an independent reading of the formerly employed state statute, Washington Administrative Code, Section 388–24–370,[2] the ALJ concluded that Finnegan was not "disabled." The district judge affirmed the finding that Finnegan's condition had not improved, but concluded that the Secretary had the authority to "initially determine" the eligibility of both grandfatherees and rollbacks. Finding that substantial evidence supported the "initial determination" of no disability in the case at bar, the district judge affirmed the termination of Finnegan's benefits.

III. *TO HAVE OR HAVE NOT: TWO INTERPRETATIONS OF THE CLAUSE*

■ On appeal, Finnegan argues that the grandfather clause of the Act operated to automatically qualify grandfatherees to receive SSI benefits. Having been qualified by congressional grandfathering to receive benefits—or, more correctly, having been exempted from the requirement that a potential recipient's eligibility be "initially determined" by the Secretary—Finnegan contends that it was improper for the Secretary to terminate his benefits based on an "initial determination" and in the absence of any express finding of either medical improvement or error in the earlier state determination of eligibility.[3]

In support of its right to "initially determine" a grandfatheree's eligibility for SSI benefits and, therefore, to terminate such benefits without a finding of medical improvement or error in the earlier state assessment of eligibility, HEW advances a significantly different interpretation of the grandfather clause. HEW argues that the clause was intended merely to guarantee the continued receipt of benefits by grandfatherees pending the Secretary's "initial determination" of continued disability. In contrast, individuals classified as "rollbacks" faced the danger of having had their benefits terminated (as of January 1, 1974), pursuant to the Act, pending the "initial determination" of their disability based on federal standards.[4] Thus, HEW argues, the grandfather clause should be read not to displace the agency regulations governing the proper means of determining eligibility, but merely to provide for continued payment until a proper determination could be made.

The main HEW regulation governing "initial determinations" provides:

---

2. Washington Administrative Code, Section 388–24–370 provides:
 "(1) In general, permanently and totally disabled means that the individual has some permanent physical or mental impairment, disease or loss that substantially precludes him from engaging in a useful occupation within his competence, such as holding a substantially gainful job or homemaking."

3. We reject the Secretary's contention that Finnegan failed to raise this claim in the court below and thus has waived it. Although worded in a slightly different manner, the heart of Finnegan's argument before both the ALJ and the district judge was that he was exempt from the requirement of an "initial determination."

4. As noted earlier, this potential hardship to the rollbacks was prevented by the decision of the Secretary to view all rollbacks as "presumptively disabled" and, therefore, as qualified to receive benefits, pursuant to regulation, pending the "initial determination" of their eligibility. See page 3, *supra*.

Initial Determinations

The Administration shall, with respect to the application (or conversion) of . . . any individual who is or claims to be an eligible individual . . ., make findings of fact setting forth pertinent conclusions and an initial determination with respect to eligibility for supplemental security income benefits and the amount of such benefits. . . . 20 C.F.R. § 416.1403(a).

HEW reasons that since Finnegan was being "converted" to the federal SSI program, and since the grandfather clause should not be read to displace regulation 416.1403(a), Finnegan was required to satisfy an initial determination of eligibility in order to prevent the termination of his ben-·efits. Since substantial evidence supports the finding that, based on an "initial determination," Finnegan was not disabled, HEW concludes that the decision to terminate benefits should be affirmed.

## IV. *IN QUEST OF THE HOLY GRAIL: SEARCHING FOR THE MEANING OF THE STATUTE*

While success for the novelist often lies in suggestive ambiguity allowing the readers to share in the process of creation, perfection for a statute's crafter lies in unquestionable clarity, forcing his audience to participate only in the process of implementation. When those charged with the responsibility of enforcing a statute find sufficient ambiguity by which to substitute creation for rote implementation, the judiciary must insure that the interpretation of the statute conforms to the probable intent of statute's collective authors. Not gifted with literary omniscience, the judiciary must rely on the words of the statute, legislative history,

subsequent case law, common sense and consideration of relevant policy implications in order to properly shape its critique.

### (a) *Plain Meaning*

 The best indicator of what statutory words mean is what they say.[5] In the present case, the grandfather clause provides that grandfatherees—like Finnegan— are to "be considered disabled for purposes of [the federal statute] if [they are] . . . disabled as defined *under a state plan* . . . so long as they are continuously disabled *as so defined.*" 42 U.S.C.A. § 1382c(a)(3)(E) (Supp.1980) (emphasis added). The words "as so defined" refer back to the state definition of "disabled" and seem to be largely dispositive of the case. The grandfathered beneficiary is assured of receiving benefits, and correlatively, is legislatively exempt from ever having to meet the federal eligibility criteria, as long as he continues to satisfy the criteria formerly adopted and employed by the appropriate state in assessing "disability."

 It is relatively easy to locate the former state statute based on which a grandfatheree was ruled to be "disabled;"[6] however, even the wisdom of hindsight will often be insufficient to allow an ALJ to understand fully how a state disability statute had been routinely interpreted and applied by the relevant administrators. Hence, it is indeed difficult, if not impossible, for an ALJ to properly assess whether a recipient is "continuously disabled" under the "complete" state standard. An ALJ's inquiry must therefore focus on whether a clear and specific error had been committed during the previous state determination of

5. The plain meaning of words and not the perception of such words by interested parties like the HEW shall always be the "master":

"When I use a word" Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean—no more, no less." "The question is," said Alice, "whether you can make words mean so many different

things." "The question is" said Humpty Dumpty, "which is to be master—that all." L. Caroll, *The Annotated Alice,* 269 (1960).

6. In fact, as noted above, the ALJ in the *present case referred to the applicable Wash-ington state statute in making his "initial deter-mination." See page 3 supra.*

eligibility [7] and on whether the recipient's medical condition has materially improved. Absent a finding of clear and specific error in the earlier determination a recipient must logically have been "disabled under a state plan;" absent a finding of subsequent material medical improvement a recipient must logically still be disabled "as so defined." The words of the statute could scarcely be clearer in providing that it is the recipient's condition and not the identity of the enforcing agency which must change in order to terminate disability benefits. The Secretary may not terminate benefits absent a showing of previous clear and specific error or medical improvement which is sufficient to establish that an applicant is no longer "continuously disabled as so defined." [8]

### B. Case Law

Although it is scarce and by no means (in itself) dispositive on the issue, the case law in the area lends support to Finnegan's interpretation of the grandfather clause. While no case directly considers the question of terminating SSI benefits to former state recipients who are covered by the grandfather clause, several cases focusing principally on the rights of "rollbacks", *see* note 1, *supra*, discuss the position of grand-

fatherees in an effort to distinguish the eligibility of the two groups. The dicta in each of these cases indicate that their judicial authors considered grandfatherees to be automatically eligible for SSI benefits and exempt from HEW's "initial determinations."

The Courts of Appeals have consistently referred to the position of grandfatherees as "conclusively presumed" to be qualified for federal SSI benefits. In *Johnson v. Mathews*, 539 F.2d 1111 (8th Cir. 1976), the Eighth Circuit noted in dicta that while grandfatherees were "conclusively presumed" to meet federal standards, rollbacks were not "automatically qualified." *Id.* at 1115. Similarly, in *Ryan v. Shea*, 525 F.2d 268 (10th Cir. 1975), the Tenth Circuit explained that:

> As a part of the definition of eligibility, Congress included a "grandfather" clause whereby persons receiving disability benefits from a state program as of December 1973 would be conclusively presumed to meet federal standards. We would note parenthetically that the federal program was in one sense, at least, a continuation of the old federal-state program. *Id.* at 270.

*See also, Tatum v. Matthews*, 541 F.2d 161, 163 (6th Cir. 1976).[9]

---

7. For example, proof that the previous state determination had been materially influenced by an incorrect medical report could serve as sufficient grounds for finding that a former recipient is no longer "continuously disabled" under the state standard, even though the recipient's medical condition has not improved. On the other hand, the mere fact that an ALJ's independent assessment of a grandfatheree's eligibility under the former state statute differs from the state's former assessment of eligibility is not sufficient to find that clear error had been committed during the earlier determination. There has been no claim in the present case that a clear and specific mistake—such as reliance on a false medical report—was committed during the state determination of Finnegan's eligibility. Therefore, we assume that no clear error had been committed in this case.

8. Although there is a dearth of legislative history concerning the proper interpretation of the grandfather clause, the existing history sup-

ports the conclusion that Congress did not intend to allow the Secretary to make "initial determinations" of the eligibility of grandfatherees. For example, the report of the House Ways and Means Committee, H.R.Rep. No. 92–231, 92nd Cong., 2nd Sess. (1972) *reprinted in* U.S.Code Cong. & Ad.News 4989, includes a statement which indicates that that committee thought that grandfatherees would automatically qualify for federal SSI benefits: "In order to facilitate an orderly transitional process, those blind and disabled people who are on the benefit rolls in June 1972 under existing State programs would be considered blind or disabled for purposes of this program." *Id.* at 5134.

9. The only 9th Circuit case on the subject, *De Lao v. Califano*, 560 F.2d 1384 (9th Cir. 1977) while not shedding a great deal of light on the issue at bar, does indicate an assumption that only rollbacks would be required to meet federal eligibility standards:

Finnegan's interpretation of the grandfather clause is even more strongly supported by the district court opinions in the area. For example, in *Buckles v. Weinberger*, 398 F.Supp. 931 (E.D.Pa.1975), the court informatively noted:

> Thus, this [grandfather] provision provided, in essence, that each and every recipient under a state plan in December of that year would automatically begin to receive benefits under SSI for the following month. It is clear from this "grandfather" clause that *SSI was intended by Congress as a wholesale replacement for, and continuation of, the former state-federal programs*, in that the identity of recipients under the two plans of assistance would be absolute. It was only with respect to *future* applicants for SSI that the uniform federal criteria were to apply. *Id.* at 939 (emphasis in original).

Similarly, in *Brown v. Weinberger*, 382 F.Supp. 1092 (D.Md.1974), aff. 529 F.2d 514 (4th Cir. 1975), the court noted that grandfatherees were "automatically" and "unconditionally" qualified for conversion to SSI. *Id.* at 1094 (dicta). Finally, the Secretary's argument was again expressly rejected in *Savrino v. Weinberger*, 396 F.Supp. 992 (D.R.I.1975) where the court, in refuting a different argument advanced on behalf of the Secretary, noted:

> Basic to the defendant's argument is the assumption that Congress intended to restrict SSI eligibility to only those who specifically qualified for the SSI program under SSI definitions of eligibility. This assumption, however, empirically denied by the fact that all persons who received [state] benefits prior to July of 1973 were automatically "grandfathered" into the SSI program with no requirements that

> Under the new SSI program, the federal government assumed most of the burden of providing benefits to those needy persons who were disabled as defined by the Act. As part of the definition of disability, Congress included a "grandfather" clause whereby persons receiving disability benefits as of December, 1973, under a state plan approved under former Title XIV or XVI as in effect for

their eligibility be reviewed under the "new" SSI definitions. *Id.* at 1001 (dicta).

### D. *Policy Analysis and Common Sense*

In addition to violating the plain meaning of the statute and the clear language—albeit in dicta—of every case discussing this issue, the Secretary's argument seems to cut against both policy and common sense. In 1972, Congress revamped the social security system to create a centrally and federally administered disability program. The new program established uniform standards of eligibility to be enforced by a single decision-making body. Within this framework, Congress specifically exempted those individuals who had previously qualified for benefits under state law from the burden of satisfying the new uniform federal standards. This exemption was accomplished through the inclusion within the new Act of a provision commonly referred to as a "grandfather" clause.

The sole function of a grandfather clause is to prevent the harsh and often unfair operation of a statutory change. In the case at bar, the statutory revision threatened to deprive individuals of the continued right to receive disability benefits. The unfairness which could have resulted from the statutory change—the undesired potential side effect of the new disability program—would have been the discontinuance of benefits to former recipients prompted solely by a change in the rules of the game and undertaken in the absence of any improvement in their disabling condition. This harsh side effect was averted through the inclusion of the grandfather clause. Yet, by reading the clause

October, 1972, were considered disabled for purposes of the new SSI program. 86 Stat. 1471–72, 42 U.S.C. § 1382c(a)(3)(A) (Supp. 11, 1972).

... As a result, all persons who became qualified under a state plan after July 1, 1973, had to meet the new federal standards of disability to be eligible under the SSI program. *Id.* at 1386.

not as an exemption from prejudice, but as a temporary delay of the onset of such prejudice, the Secretary seeks to preserve the same harsh side effect which the grandfather clause was intended to eliminate. The Secretary's interpretation [9a] of the provision would completely undermine the very purpose for which the grandfather clause was adopted.[10]

## V. *FROM HERE TO ETERNITY: CONCLUSION*

The tools of statutory interpretation clearly indicate that the grandfather clause was designed to qualify automatically those included within its coverage for SSI benefits, and correlatively, to exempt grandfatherees from the requirement of undergoing "initial determinations" of eligibility by HEW. Therefore, benefits to a grandfatheree must not be terminated absent proof of a material improvement in his medical condition or of the commission of a clear and specific error during the prior state determination. Since there has clearly been no material improvement in Finnegan's medical condition or clear and specific error in the prior state proceedings awarding benefits to Finnegan, it was improper for the district court to allow a termination of Finnegan's benefits. The decision of the lower court is therefore

REVERSED.

**9a.** We are mindful of the maxim that a court should give deference to the interpretation of a statute by the agency charged with its administration. *Brubaker v. Morton*, 500 F.2d 200 (9th Cir. 1974). It is well established, however, that "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *National Labor Relations Board v. Brown Food Store*, 380 U.S. 278, at 291, 85 S.Ct. 980, at 988, 13 L.Ed.2d 839 (1965); *Usery v. First National Bank of Arizona*, 586 F.2d 107, 111 (9th Cir.

1978); *Hodgson v. Consolidated Freightways*, 503 F.2d 797, 800 (9th Cir. 1974).

**10.** As an extreme example, the Secretary could have set out on January 2, 1974 to make the first "initial determination" of the eligibility of a grandfatheree. A former state recipient could then have been disqualified from receiving benefits (without any change in his condition) on the first day of the program. The grandfather clause would have thus been rendered totally meaningless.