Ronald SIEDLECKI, et al., Plaintiff,

v.

Richard SCHWEIKER, Defendant.

No. C82–61R.

United States District Court,
W.D. Washington.

Jan. 26, 1983.

Kristin Houser, Seattle, Wash., Thomas Bothwell, Yakima, Wash., Stephen A. Maddox, Olympia, Wash., for plaintiff.

Richard Wetmore, Christopher Pickrell, Asst. U.S. Atty., Seattle, Wash., for defendant.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court upon cross motions for summary judgment by Ronald Siedlecki, who represents the certified class of plaintiffs, and by defendant, Richard Schweiker, Secretary of the United States Department of Health and Human Services ("the Secretary"). This case involves plaintiffs' challenge to the Secretary's use of regulatory standards to cease disability benefit payments to "grandfatherees", that is, benefit recipients originally determined by the State to be disabled. The Ninth Circuit Court of Appeals in *Finnegan v. Matthews*, 641 F.2d 1340 (9th Cir. 1981) held that benefits to grandfatherees could not be terminated absent proof of a material improvement in the medical condition of the disabled person or the commission of a clear and specific error during the prior State determination which awarded benefits. Plaintiffs contend that this standard should be applied to them, rather than the Secretary's regulations, which contain no such requirement. Having carefully considered the motions, memoranda of counsel, and the entire record, the court finds and rules as follows:

## I. BACKGROUND

In October, 1972, Congress repealed Title XIV of the Social Security Act which had provided federal grants to state-administered disability assistance programs. 42 U.S.C. §§ 1351–1355, Pub.L. No. 92–603, 86 Stat. 1484 § 303 (repealed 1972). Congress established a program called the Supplemental Security Income for Aged, Blind and Disabled ("SSI") under which the federal government assumed the burden of providing benefits directly to those people who were defined as disabled. 42 U.S.C. §§ 1381–1383. The program became effective in January, 1974.

As part of the definition of "disability" under the Act, Congress included the following "grandfather" clause:

[A]n individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled *as defined under a State Plan* approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled *as so defined.*

42 U.S.C. § 1382c(a)(3)(E) (Supp.1980) (emphasis added). The availability of federal disability benefits to grandfatherees, those who had received aid under a state plan for at least one month prior to July 1973, is controlled solely by the operation of the statutory grandfather clause. See *Finnegan v. Matthews,* 641 F.2d 1340, 1342 (9th Cir.1981). The following regulation governs the cessation of disability benefits to grandfatherees:

(a) *General.* When the medical or other evidence in your file shows that your disability has ended, we will contact you and tell you that the evidence in your file shows that you are able to do substantial gainful activity and that your eligibility for benefits will end....

(e) *Persons who were found disabled under a State plan.* If you became entitled to benefits because you were found to be disabled under a State plan, we will find that your disability ended in the later of the following months—

(1) The month in which your disability, as shown by current medical or other evidence, does not meet the criteria of appropriate State plan; *or*

(2) The month in which your disability ended under the provisions of paragraphs (b), (c) or (d) of this section.

20 C.F.R. § 416.994(e) (1982):

In *Finnegan,* the Court interpreted the grandfather clause. Mr. Finnegan's application for state disability was approved by the state of Washington in 1972. In 1974 he was converted to the SSI program as a grandfatheree. In December, 1975, he received notice that his benefits would cease because his medical condition had allegedly improved and his disability had ceased. At the agency hearing the administrative law judge ("ALJ") found that Finnegan's medical condition had not improved, but that the then Department of Health, Education and Welfare was entitled, based on agency regulations, to make an "initial determination" of Finnegan's eligibility. The district court judge affirmed, but the Ninth Circuit reversed finding that the Secretary's position violated not only the plain meaning of the statute's language but common sense as well:

The sole function of a grandfather clause is to prevent the harsh and often unfair operation of a statutory change.... The unfairness which could have resulted from the statutory change—the undesired potential side effect of the new disability program— would have been the discontinuance of benefits to former recipients prompted solely by a change in the rules of the game and undertaken in the absence of any improvement in their disabling condition. This harsh side effect was averted through the inclusion of the grandfather clause. Yet, by reading the clause not as an exemption from prejudice, but as a temporary delay of the onset of such prejudice, the Secretary seeks to preserve the same harsh side effect which the

grandfather clause was intended to eliminate.

641 F.2d at 1346–47.

The instant case is similar to *Finnegan*. Initially, SSA had informed Mr. Finnegan that he was medically improved and, therefore, no longer disabled. The ALJ found that Finnegan had not improved but still found him ineligible for disability benefits. The ALJ's decision on Siedlecki includes a finding that his medical condition had improved. See ALJ's decision in the case of Ronald E. Siedlecki attached to Defendant's Motion to Dismiss, Dkt. No. 42. This court has already found, however, that there is nothing at all in the administrative record to substantiate the ALJ's finding. Order of August 9, 1982 Denying Defendant's Motion to Dismiss, Dkt. No. 59. Nowhere is there any finding or discussion of Siedlecki's condition under the state criteria which made him eligible compared to his current condition. In terms of what is required by *Finnegan*, the finding by the ALJ is meaningless. In the various briefs submitted by the Secretary, he does not argue that the medical improvement standard required by *Finnegan* has been met for either Siedlecki or any of the other named plaintiffs.

## II.   LEGAL ARGUMENTS

### A.   THE SECRETARY'S AUTHORITY

The Secretary's first argument is that the scope of review by this court is limited. Various well known principles of review of agency action are cited: The legality of agency action is presumed. *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). Regulations can be set aside only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Randolph-Sheppard Vendors of America, Inc. v. Harris*, 628 F.2d 1364, 1366 (D.C.Cir.1980). The plaintiffs' position is, of course, that the Secretary's action and official policy is "not in accordance with the law". Furthermore, if the Secretary's action and official policy contravenes the *Finnegan* standard, as contended by plaintiffs, this court is not even called upon to interpret the statute, because the Ninth Circuit has already spoken on the subject.[1]

### B.   THE SECRETARY'S POLICY VERSUS THE FINNEGAN STANDARD

■ The Secretary also contends that the *Finnegan* decision, by requiring proof of an improvement in medical condition or a clear and specific error in the prior State determination, ignores other factors which could alter an individual's eligibility for benefits, such as vocational adjustment, adaptation, training, augmentation of educational attainment or advances in medical treatment.[2] Defendant points to nothing in the record, nor has the court found, evidence that plaintiffs were terminated because of any kind of improvement from their initial condition as found by the State. The issue is, therefore, irrelevant.

Also irrelevant is the Secretary's argument that evidence on which recipients' claims were originally allowed "may not be available or may not even exist". The Secretary has submitted nothing to support this argument. He does not even allege that plaintiffs' files are deficient regarding the initial determination of disability by the State.

---

1.  Defendant presented the same argument on agency discretion to the Court of Appeals. The Court wrote:

> We are mindful of the maxim that a court should give deference to the interpretation of a statute by the agency charged with its administration.... It is well established, however, that "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute."

641 F.2d at 1347 n. 9a.  (citations omitted).

2.  In *Patti v. Schweiker,* 669 F.2d 582 (9th Cir. 1982) the Ninth Circuit held that specific findings of improvement are required in order to terminate any SSI recipients, not just grandfatherees. The type of improvements was not just medical but extended to other improved conditions. Plaintiffs have stated that they are not trying to restrict SSA to a finding of medical improvement only. As explained above, the issue is not properly before the court.

The Secretary next argues that *Finnegan* does not control here because the decision focused on the distinction between grandfatherees and "rollbacks"[3] and did not discuss the termination regulation; therefore, the standard for termination was a peripheral issue. It is true that the decision does not dwell on the regulation, but to say that the standard for termination was peripheral is absurd. The distinction between grandfatherees and rollbacks was reviewed solely to understand the case law in the area and reach the central question of what standard applies to the termination of grandfatherees. See 641 F.2d at 1342 n. 1; 1347.

As for the regulation, the Secretary asserts that the Court in *Finnegan* made no mention of either the new regulation or the announcement of the Secretary's policy on August 20, 1980. Because the new regulation was part of the record and the arguments presented to the Ninth Circuit in *Finnegan,* the Secretary's assertion is incorrect. See Exhs. D & E to Plaintiffs' Response to Defendant's Memorandum for Summary Judgment. But more importantly, the argument misses the mark. The issue, as the Ninth Circuit stated in *Finnegan,* is not the regulation itself, but rather the Secretary's policy and interpretation of the regulation.

The interpretation of the regulation by the Secretary has not changed since *Finnegan.* The Secretary's position in *Finnegan* was that grandfatherees were subject to *initial* determination of eligibility by the Social Security Administration. The new regulation and the Secretary's announcement of policy regarding the regulation was published August 20, 1980, after the Secretary's final decision in *Finnegan* but before argument to the Ninth Circuit. To a comment that a showing of medical improvement should be made before benefits could be terminated, the Secretary responded as follows:

Response: Our previous regulations dealing with cessation of disability (in cases other than widow's and widower's claims) provided that disability should be found to have ended when the impairment is no longer of such severity as to prevent the individual from engaging in any substantial gainful activity (SGA). Those regulations have been interpreted by some to mean that not only must the current evidence show that the individual is unable to engage in SGA but that the evidence must also demonstrate that the impairment forming the basis for the previous allowance (or continuance) has improved. This interpretation can result in the payment of benefits to persons who can engage in substantial gainful activity and who are no longer disabled or blind within the meaning of the law, but for whom actual "improvement" cannot be shown. These recodified regulations make it clear that disability ends when current evidence shows that the individual is able to engage in SGA regardless of whether actual improvement can be demonstrated. *We do not agree that this position ignores the position taken by any Federal court. The decision that a person's disability or blindness has ended will not be based on a reexamination of old evidence but will be based on new evidence* which will have to reasonably show that the person is able to perform substantial gainful activity. *We do not agree that a finding that a person is disabled or blind should be allowed to stand* in the face of evidence to the contrary *simply because of the lack of evidence clearly showing medical improvement.*

45 Fed.Reg. 55583 (August 20, 1980) (emphasis added). The above quote makes it clear that the Secretary still intends to make initial determinations of the eligibility for benefits of grandfatherees. This policy is in direct contravention to the position of various federal courts.

---

**3.** The rollback amendment to the grandfather clause requires that the individual be disabled for at least one month prior to July 1973. The purpose of the amendment was to prevent states from transferring welfare recipients onto the disability rolls in anticipation of the federal takeover. Later, these "rollbacks" were classified as presumptively disabled until an initial determination of eligibility could be made. See 42 U.S.C. § 1383(a)(4)(B) (Supp.1980); 20 C.F.R. § 416.954; *Finnegan v. Matthews,* 641 F.2d at 1342.

More particularly, since the decision in *Finnegan,* the Secretary's policy has become one of official opposition to the law established in the Ninth Circuit. SSA's policy is not to acquiesce with *Finnegan.* This policy has become known as the SSA's policy of "non-acquiescence":

The Social Security Administration (SSA) does not acquiesce in the court's decision [*Finnegan*]. . . .

SSA believes that the court's standard for determining whether SSI disability benefits to a grandfatheree should terminate would be impossible to administer and that the correct standard for making such a determination is in 20 CFR 416.-994(e); i.e., that disability of a grandfatheree terminates when his or her "disability as shown by current medical or other evidence does not meet the criteria of the appropriate State Plan" and does not meet the Federal criteria. . . .

Consequently, SSA *holds* that the standard in 20 CFR 416.994(e), and not the one set forth by the court, should apply in determining whether the disability of a title XVI grandfatheree has ceased.

Social Security Rulings, SSR 82–10c (January, 1982).

The Chief of the Washington State Office of Disability Insurance, which is SSA's contractual agent for performing evaluations of continuing disability has stated:

We are not obliged or permitted to consider the decisions that have been rendered in the past. We are to look at that case as if it were an initial decision and make our judgments accordingly as we understand the current standards.

Stated another way, we would treat that case as if it were an initial claim and if we could allow it we would continue it. If we could deny it we would terminate it.

Deposition of Ed Davis, p. 12, June 18, 1982.

On May 25, 1982 the Director of the Human Resources Division of the United States General Accounting Office, Gregory J. Ahart, reported on SSA's program for reviewing the continuing eligibility of disabled persons to the Senate Subcommittee on Oversight of Government Management. In the report, Ahart noted that "many of those losing their disability benefits have been on the SSA rolls several years, still have what we would all consider to be severe impairments, and have experienced little or no medical improvement. This raises questions about how and why these people are being terminated, and the fairness of SSA's decisions." Later he stated that SSA has instructed state agencies to adjudicate claims in generally the same manner as initial claims. The result of these instructions was that state agencies are gathering only current evidence and using it to determine if the beneficiary currently meets SSA's criteria for disability. Exh. G to Plaintiffs' Response to Defendant's Memorandum for Summary Judgment.

In response to requests for admissions submitted by plaintiffs in this case, defendant made the following admissions. SSA policy on continuing disability was changed in May 1976 to require that the individual's current condition be evaluated and a determination as to continuance or cessation be made based on current medical findings. The provisions of the Washington State plan from which persons were grandfathered into SSA are different from the current uniform federal-SSA disability standards.

And finally, in Defendant's Reply to Plaintiff's Response, the Secretary states, "[t]he Secretary's position is that a showing of improvement is not necessary in order to terminate benefits where current evidence indicates that an individual does not meet state or federal criteria for disability." The Secretary has failed to demonstrate that *Finnegan* is an extraordinary decision.[4]

---

4. The Ninth Circuit's standard is not at all extraordinary. See *e.g., Hayes v. Secretary of HEW,* 656 F.2d 204 (6th Cir.1981); *Cassiday v.* *Schweiker,* 663 F.2d 745 (7th Cir.1981); *Musgrove v. Schweiker,* 552 F.Supp. 104 (E.D.Pa., 1982); *Schisler v. Schweiker,* No. 80–573E

Even if it were, his position, which clearly contravenes *Finnegan,* cannot be justified.[5]

Reduced to its essence, the Secretary's argument is that his department, in spite of the *Finnegan* decision, should be allowed to make initial determinations of the continuing eligibility for SSI benefits of grandfatherees. This court finds that *Finnegan* controls. The SSA must follow the Ninth Circuit's decision within this jurisdiction. *Jones & Laughlin Steel v. Marshall,* 636 F.2d 32 (3d Cir.1980); *ITT World Communications v. FCC,* 635 F.2d 32 (2d Cir.1980); *Mary Thompson Hospital v. NLRB,* 621 F.2d 858 (7th Cir.1980).

IT IS ORDERED that defendant's motion for summary judgment is DENIED and plaintiffs' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' request for a permanent injunction under the terms of this court's March 12, 1982 order is GRANTED.

Adverse administrative decisions against members of the plaintiffs' class which have been rendered post-*Finnegan* (April 16, 1981), where administrative decisions do not expressly adopt the *Finnegan* standards are REVERSED.

(E.D.N.Y., August 11, 1981); *Baye v. Secretary of HHS,* 78–CV–662 (N.D.N.Y., April 18, 1981); *Bugg v. Califano,* No. C–2–78–541 (E.D.Ohio, May 25, 1979); *Luke v. Schweiker,* No. E80–0083(c) (S.D.Miss., Sept. 15, 1981); *Messano v. Mathews,* Unemp.Ins.Rptr., ¶ 15,128 (D.Colo., Jan. 27, 1977); *Pine v. Mathews,* Unemp.Ins. Rptr., ¶ 14,709 (D.R.I., March 24, 1976); *Prevette v. Richardson,* 316 F.Supp. 144 (D.S.C. 1970).

5. The Secretary also argues that the burden of establishing both initial and continuing eligibility for disability benefits rests on the claimant. *Torres v. Schweiker,* 682 F.2d 109 (3d Cir. 1982); *Miranda v. Secretary of HEW,* 514 F.2d 996 (1st Cir.1975). Those cases do not address the issue presented here and in *Finnegan.* Moreover, in *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982), the Ninth Circuit recognized that the burden rests with the claimant but found that that burden was not inconsistent with an improvement standard. *Id.* at 587.