Mario LOPEZ, et al., as individuals; People First of California, Inc., et al., as organizations; on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Margaret M. HECKLER, Secretary of the Department of Health and Human Services, and John A. Svahn, Commissioner of the Social Security Administration, Defendants.

Civ. No. 83–0697–WPG(T).

United States District Court,
C.D. California.

June 16, 1983.

Dan Stormer, Mary S. Burdick, Alan Rader, Western Center on Law & Poverty, Inc., Elena H. Ackel, Legal Aid Foundation of Los Angeles, Byron Gross, Legal Aid Foundation of Los Angeles, Ellen Finkelberg, Louis Finkelberg, Frankel & Finkelberg, Los Angeles, Cal., James S. Carroll, Lew Hollman, Bruce Iwasaki, San Fernando Valley Neighborhood Legal Services, Inc., Pacoima, Cal., Neal S. Dudovitz, Sally Hart Wilson, Gill Deford, Peter Komlos-Hrobsky, National Senior Citizens Law Center, Marilyn Holle, Protection and Advocacy, Inc., Daniel Brzovic, Western Law Center for the Handicapped, Los Angeles, Cal., Edward Ober, Community Legal Services, Phoenix, Ariz., Richard Donaldson, Las Vegas, Nev., James Preis, Barbara Bennett, Mental Health Advocacy Services, Inc., Los Angeles, Cal., Martin Wegbreit, Client Centered Legal Services of South West Virginia, Castlewood, Va., Roberta Lindberg, Lane County Legal Aid Service, Inc., Eugene, Or., for plaintiffs.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

This is a proposed class action against the Secretary of Health and Human Services and the Commissioner of the Social Security Administration, challenging procedures used in terminating Social Security disability benefits.[1] The plaintiffs are twenty assertedly disabled individuals and fourteen organizations, the former bringing suit on behalf of themselves and those similarly situated. Eighteen of the plaintiffs also seek to have the terminations of their individual benefits reversed pursuant to 42 U.S.C. § 405(g). The plaintiffs have filed motions for vacation of reference to the magistrate, class certification and prelimi-

J. Paul McGrath, Asst. Atty. Gen., Lewis K. Wise, Brian G. Kennedy, Dept. of Justice, Washington, D.C., Stephen S. Trott, U.S. Atty., Howard Gest, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

---

1. At issue here are two kinds of social security disability benefits. Title II of the Social Security Act established disability insurance benefits for disabled workers, 42 U.S.C. § 401, *et seq.* (SSDI). These benefits are based upon the individual's earnings record and are paid without regard to financial need.

   Title XVI of the Social Security Act created Supplemental Security Income Disability bene-

   fits for persons who are both poor and disabled, 42 U.S.C. § 1381, *et seq.* (SSI). SSI benefits are paid to eligible poor persons whose income and resources fall below a specified level. Disability recipients whose SSDI benefits are less than the monthly SSI benefit level in a particular state are also eligible to receive partial SSI benefits to supplement their SSDI benefits.

nary injunction; the defendants have filed a motion to dismiss for lack of jurisdiction. The defendants' motion is denied and the plaintiffs' motions are granted, as set forth in the terms of the order filed with this memorandum.

Beginning in March 1981, the Social Security Administration (SSA) noticeably accelerated the rate at which it reviews the disability status of those receiving disability benefits. In the calendar year 1980, 185,639 Continuing Disability Investigations (CDIs) were conducted;[2] in the fiscal year 1982, 435,262 CDIs were conducted.[3] It would appear that the acceleration of the review process resulted in a dramatic increase in terminations. In fiscal year 1982, 195,474 beneficiaries were removed from the disability rolls, as compared with 98,800 terminated in fiscal year 1981.[4]

In two recent opinions, the Court of Appeals of this circuit held that before disability benefits may be terminated for lack of disability, the Secretary must produce evidence showing improvement in the recipient's medical condition. *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982)[5] and *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981).[6] The Secretary has announced that she "does not acquiesce" in these decisions and has issued rulings to her subordinates, including administrative law judges, directing them not to act in accordance with these precedents.[7]

The plaintiffs challenge the constitutionality of the Secretary's policy of nonacquiescence on the grounds that it violates the principles of Separation of Powers and *stare decisis,* as well as the plaintiffs' right to due process. The Government denies that the policy of nonacquiescence is illegal and contends that the effect of the nonacquiescence rulings is merely to preserve the Secretary's right to ask the courts of ap-

**2.** C. Pepper, Impact of the Accelerated Review Process on Cessations and Denials in the Social Security Disability Insurance Program, 97th Cong., 2d Sess. (1982), *reprinted in Social Security Disability Insurance Program: Cessations and Denials: Hearing Before the House Select Committee on Aging,* 97th Cong., 2d Sess. 3 at 10 (1982).

**3.** Letter from Paul B. Simmons, Deputy Commissioner for Programs and Policy, Social Security Administration to Senator John Heinz, responding to questions from Senator Heinz submitted on April 12, 1983 (Plaintiff Reply Brief, Exhibit Z).

**4.** *Id.*

**5.** In *Patti,* SSI disability benefits were terminated and the plaintiff challenged such termination on the grounds that the decision was not based on substantial evidence, that her procedural rights were abused, and that the termination resulted from illegal use of social security regulations as a substitute for an individualized inquiry into her disability. The Court of Appeals reversed the district court's affirmance of termination, holding that the initial decision that plaintiff was disabled gave rise to a presumption that she still was disabled. 669 F.2d at 587. The court ruled that the Secretary, in *terminating a recipient, must* " 'meet or rebut' " the presumption with evidence that the recipient's medical condition has improved in the interim. *Id.* This presumption imposes upon the Secretary the burden of coming forward

with evidence that a recipient's condition has changed, a burden that had not been met in that case. *Id.*

**6.** In *Finnegan,* a recipient of SSI disability benefits under the "grandfather clause" of the Social Security Act challenged his termination. The grandfather clause, 42 U.S.C. § 1382c(a)(3)(E), provides that an individual shall be considered disabled if he is permanently and totally disabled as defined under an approved state plan, had received aid under such plan during a specified time in 1973, and so long as he is continuously disabled as so defined. The Court of Appeals held that the Secretary "may not terminate benefits absent a showing of previous clear and specific error [in the initial determination] or medical improvement which is sufficient to establish that an applicant is no longer 'continuously disabled as so defined.' " 641 F.2d at 1345.

**7.** SSR 82–49c states the SSA's nonacquiescence in *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982).

SSR 82–10c states the SSA's nonacquiescence in *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981).

SSR 81–6 directs that where the evidence obtained at the time of a continuing disability investigation establishes that the individual is *not currently disabled or blind,* a finding of cessation is appropriate, irrespective of whether or how much the individual's condition has medically improved since the prior favorable determination.

peals, and possibly the Supreme Court, to overrule decisions like *Patti* and *Finnegan* in appropriate cases.

This court notes that this litigation involves more than 42 U.S.C. § 405(g) claims and is a class action in which injunctive relief is requested. Since 28 U.S.C. § 636 does not empower magistrates to determine pretrial matters with respect to such actions, and since the parties agree that vacation of reference to the magistrate should be granted for the purpose of these motions, the vacation will be ordered.

With respect to the defendants' motion to dismiss for lack of jurisdiction, the court finds that this case fits within the exception to the exhaustion of administrative remedies requirement enunciated in *Weinberger et al. v. Salfi et al.,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). There, the Supreme Court ruled that the three-judge district court did have jurisdiction to consider a constitutional challenge by some plaintiffs to certain Social Security eligibility requirements. Those plaintiffs had not exhausted the administrative processes by taking their grievances to an administrative law judge or the SSA's Appeals Council. The Court noted that formal exhaustion was not required there because the purposes of exhaustion—to prevent premature interference with agency processes and to provide the agency an opportunity to correct its own errors—had been served, once the Secretary "has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine . . . ." *Id.* at 765, 95 S.Ct. at 2467.

The Ninth Circuit Court of Appeals has noted that where a ruling by the Secretary, while "nominally leaving the administrative review process open for claims . . . ," in effect makes the result of that process "both pre-ordained and immutable," the *Salfi* exception applies. *Ringer et al. v. Schweiker,* 697 F.2d 1291, 1295 (9th Cir. 1982). The court noted that such a ruling "not only makes appeals futile . . . ," but also "indicates that the Secretary believes appeals are worthless to the Agency as well as to the claimant." *Id.* at 1295-6.

Here, in view of the Secretary's attitude, clearly enunciated in her ruling directing administrative law judges and the Appeals Council to ignore *Patti* and *Finnegan,* and not to apply a medical improvement standard in disability termination cases, appeals would indeed be futile. Thus, exhaustion of remedies would serve no useful purpose in this instance. Under the authority of *Salfi, supra,* and *Ringer, supra,* the defendants' motion to dismiss will be denied.

Regarding the plaintiffs' motions for class certification and for a preliminary injunction, the issues raised are inextricably intertwined with each other and with the merits of the plaintiffs' constitutional challenge. Our Court of Appeals has stated that to obtain a preliminary injunction the moving party must demonstrate "*either* a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *Beltran et al. v. Meyers et al.,* 677 F.2d 1317, 1320 (9th Cir. 1982) (emphasis in original). The plaintiffs have fulfilled both tests.

As to the first test, they have demonstrated probable success on the merits by making a strong argument that agencies are bound by the laws of the circuit. "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases must of necessity expound and interpret that rule." This principle was laid down many years ago by Chief Justice Marshall in the landmark case of *Marbury v. Madison,* 5 U.S. (1 Cranch.) 137, 177, 2 L.Ed. 60 (1803). It has generally been accepted and acclaimed ever since, and it is the cornerstone of the doctrine of Separation of Powers that has served our country so well. Thus, governmental agencies, like all individuals and other entities, are obliged to follow and apply the law as it is interpreted by the courts. The courts of appeals in other circuits categorically have denied the authority of a federal executive body to

nonacquiesce in the law enunciated by our courts of appeals. *Allegheny General Hospital v. NLRB,* 608 F.2d 965 (3rd Cir.1979) (holding that a NLRB order predicated on the agency's disagreement with the Court of Appeals' interpretation of a statute is operating outside the law and thus unenforceable); *accord, Ithaca College v. NLRB,* 623 F.2d 224, 228 (2d Cir.1980) ("as must a district court, an agency is bound to follow the law of the circuit.").

In announcing the policy of nonacquiescence that is challenged here, the Secretary commented that in "many" instances the evidence on which disability was originally allowed "may not be available, or may not even exist." Such a circumstance would, indeed, make it very difficult, perhaps impossible, fully to apply the rule announced by the Court of Appeals in *Patti* and *Finnegan.* If such problems arise, as they occasionally may do, the obligation of the administrative body is to do the best that it can to proceed in harmony with the rule, and infer only such exception as is made necessary by the facts in the particular case. But for the Secretary to make the general assertion that a decision of the Court of Appeals is not to be followed because she disagrees with it is to operate outside the law.

The policy of nonacquiescence announced by the Secretary creates two standards governing claimants whose disability benefits are terminated as a result of such nonacquiescence. If such a claimant has the determination and the financial and physical strength and lives long enough to make it through the administrative process, he can turn to the courts and ultimately expect them to apply the law as announced in *Patti* and *Finnegan.* If exhaustion overtakes him and he falls somewhere along the road leading to such ultimate relief, the nonacquiescence and the resulting termination stand. Particularly with respect to the types of individuals here concerned, whose resources, health and prospective longevity are, by definition, relatively limited, such a dual system of law is prejudicial and unfair.

The plaintiffs have fulfilled the second requirement of the first test for preliminary injunction by showing that delay for the litigants creates a strong possibility of irreparable injury. The record shows that some who have unexpectedly lost benefits have already suffered deprivation of life's necessities, further illness, or even death from the very disabilities that the Secretary deemed them not to have. Retroactive relief would be inadequate, and perhaps too late, to ensure that the purpose of Social Security disability benefits, i.e., provision of a minimum standard of living for the poor and disabled, will be served.

As to the second test for preliminary injunction, the plaintiffs' claim that the Secretary's failure to abide by federal appellate precedents denies them due process of law certainly raises serious legal questions. Because many plaintiffs have their sole means of support at stake, the balance of hardships tips sharply in their favor. Thus, under both alternative tests for preliminary injunction, the plaintiffs have demonstrated their right to provisional relief pending the final disposition of this case.

■ The plaintiffs request certification of both a nationwide class and a Ninth Circuit subclass for the purposes of this injunction. As to the proposed Ninth Circuit class, the plaintiffs define it to be "all persons whose rights and benefits are, have been, or will be denied by defendants' express refusal to follow the judicial precedent" set by the *Patti* and *Finnegan* cases. This court now finds that this group fulfills the requirements for class certification under Federal Rule of Civil Procedure 23(a). Since the defendants estimate that the proposed class will include over 72,000 terminees, not to mention those future terminees who will be protected by the requested injunction, the class is indeed "so numerous that joinder of all members is impracticable." The common constitutional challenge to the policy of nonacquiescence is a legal claim shared by all class members. The class representatives' claims are typical of those of the class since they stem from the

same course of conduct, again the nonacquiescence, and pose the same constitutional challenge thereto. The representatives are adequate because they have no interests antagonistic to the class members and seek the identical relief sought for the class. Moreover, counsel for these representatives are able and experienced in protecting the interests of the poor.

■ The proposed Ninth Circuit class also fulfills the requirement of Federal Rule of Civil Procedure 23(b)(2). Final injunctive relief is appropriate with respect to the class as a whole because the Secretary has acted on grounds generally applicable to the class, i.e., her alleged authority to nonacquiesce in *Patti* and *Finnegan*. Thus the proposed class action will be adjudged maintainable, pursuant to Rule 23(c)(1).

In light of the foregoing, this court certifies a class of plaintiffs who live within this circuit, consisting of SSI and SSDI recipients who have been or will be considered for termination after August 30, 1981,[8] and SSI recipients under the "grandfather clause" of the Social Security Act who have been or will be considered for termination after August 25, 1980,[9] and excluding those who have been or will be terminated due to reasons unrelated to current disability or medical improvement (e.g., actual return to work or improvement in financial condition).

■ While sympathetic with plaintiffs' challenge to the Secretary's nonacquiescence policy, this court declines to certify a nationwide class and issue an injunction in gross. This court is unfamiliar with the nature and extent of the Secretary's interference by nonacquiescence with federal appellate precedent in other circuits. Courts in those circuits will be better equipped to preserve the law as announced by their respective courts of appeals than is this court.

All members of the class here established have a right to the protection of the law of this circuit. The injunction to be issued will permit restoration of benefits,[10] subject to termination proceedings that will follow the requirements of the law.

## ORDER

Pursuant to the Memorandum of Decision filed this date,

IT IS ORDERED THAT:

1. The reference to the magistrate of the matters concerned in this order is vacated.

2. The defendants' motion to dismiss for want of jurisdiction is denied.

3. The plaintiffs' motion for certification of a Ninth Circuit class is granted, and such class shall consist of all persons who live within this circuit, who (a) receive or received Supplemental Security Income Disability benefits or social security disability insurance benefits and have been or will be considered for termination after August 30, 1981, or (b) receive or received Supplemental Security Income Disability benefits under the "grandfather clause" of the Social Security Act and have been or will be considered for termination after August 25, 1980. This class does not include those who have been or will be terminated due to

---

**8.** This date represents the date on which *Patti* became final (i.e., the date upon which the Court of Appeals denied rehearing and rehearing en banc (June 30, 1982) plus sixty days, the time during which the Secretary could have sought review of the decision (August 30, 1982)), minus one year (August 30, 1981). The one year is subtracted because the Secretary has authority, for any reason, to reopen cases up to one year after administrative decisions become final. 20 C.F.R. §§ 404.988, 416.1488.

**9.** This date represents the date on which *Finnegan* became final (August 25, 1981) minus one year (August 25, 1980).

**10.** This court is mindful that the provisional remedy prescribed in the accompanying order does not restore the class members to the *status quo* existing before termination. To do so would require an award to each class member of those benefits not received by virtue of the Secretary's failure to terminate them in accordance with the law of this circuit. It would be inappropriate to grant such an award at this juncture, however, because this controversy has not been fully litigated and the plaintiffs have not requested such relief.

reasons unrelated to current disability or medical improvement (e.g., actual return to work or improvement in financial condition).

The plaintiffs' motion for certification of a nationwide class is denied.

4. The plaintiff's motion for a preliminary injunction is granted as follows:

The defendants, their agents and employees are enjoined and restrained within the Ninth Circuit:

(a) From failing to follow, implement or accord precedential effect to *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981) and *Patti v. Schweiker,* 669 F.2d 582 (9th Cir. 1982).

(b) From implementing the nonacquiescence policy contained in Social Security Rulings Nos. 82–10c, 82–49c and 81–6, attached hereto, Exhibits A, B and C.

(c) In order to accomplish appropriate restoration of disability benefits pending resolution of this action, the court orders the defendants to implement the following procedure:

(i) Within sixty (60) days following the date of this order, the defendants will notify (a) each class member who had been receiving Supplemental Security Income Disability benefits under 42 U.S.C. § 1382c(a)(3)(E), and who was terminated from such benefits after August 25, 1980, and (b) all other persons who have been terminated from either Title II social security disability insurance or Title XVI Supplemental Security Income Disability after August 30, 1981, for the purported reason that his or her disability had ceased, whether or not such person has appealed, that:

Such person may apply for reinstatement of benefits if he or she believes that his or her medical condition has not improved following the granting of disability benefits.

(ii) Upon receiving such application, the defendants will forthwith reinstate and pay benefits in the monthly amounts such person would have been receiving had his or her benefits not been interrupted.

(iii) Following such reinstatement, if the defendants or their agents or employees conduct a disability investigation or other screening of such person, they will apply the standards set forth in *Patti v. Schweiker* and *Finnegan v. Matthews* and, if they conclude that such person's medical condition has improved and he or she is no longer disabled, they will identify the evidence relied upon to reach that conclusion.

(iv) Following such review, persons who are notified of an initial determination that their benefits shall cease shall be given an opportunity to contest the determination and pending such review, they shall continue to receive aid as provided in current laws and regulations.

EXHIBIT A

SECTION 1614(a)(3)(E) (42 U.S.C. 1382c(a)(3)(E) SUPPLEMENTAL SECURITY INCOME—CONTINUANCE OR CESSATION OF A GRANDFATHEREE'S DISABILITY—A RULING OF NON–ACQUIESCENCE

SSR 82:10c

20 CFR 416.994(e)

*Finnegan v. Matthews,* 641 F.2d 1340 (1981)

The Social Security Administration (SSA) does not acquiesce in the court's decision.

The claimant, who had been receiving State disability welfare payments since 1972, was grandfathered into the Supplemental Security Income (SSI) program on January 1, 1974. Section 1614(a)(3)(E) of the Social Security Act (the Act) provides for the continued payment of SSI benefits to a grandfatheree who "is permanently and totally disabled as defined under a State plan ... so long as he is continuously disabled as so defined." Following a continuing disability investigation, SSA determined that the claimant's SSI benefits would terminate be-

cause he did not meet the requirements for entitlement at the time of the continuing disability investigation. This determination was affirmed by the district court.

The court of appeals, however, reversed SSA's determination. It found that SSI disability benefits to a grandfatheree may not be terminated unless SSA shows that there was either a material improvement in the grandfatheree's medical condition or a clear and specific error in the prior State determination. Because neither of those conditions was shown by SSA to be met, the court held that SSA's termination of the claimant's SSI benefits was improper.

SSA believes that the court's standard for determining whether SSI disability benefits to a grandfatheree should terminate would be impossible to administer and that the correct standard for making such a determination is in 20 CFR 416.994(e); i.e., that disability of a grandfatheree terminates when his or her "disability as shown by current medical or other evidence does not meet the criteria of the appropriate State plan" and does not meet the Federal criteria. Many grandfatherees were on State disability rolls for years before conversion, and the evidence on which they were originally allowed may not be available, or may not even exist. Therefore, in those cases, SSA could not possibly prove either "material improvement" or "clear and specific error" in the prior State determination. Thus, under 20 CFR 416.994(e) the grandfatheree properly remains in SSI benefit status only until it is found that the grandfatheree's disability, as shown by current medical or other evidence, meets neither the State nor Federal definition of disability. SSA believes that this regulation is fully consistent with the requirements of section 1614(a)(3)(E) of the Act and with congressional intent.

Consequently, SSA *holds* that the standard in 20 CFR 416.994(e), and not the one set forth by the court, should apply in determining whether the disability of a title XVI grandfatheree has ceased.

SECTION 1614(f)(2) (42 U.S.C. 1382c(f)(2)) SUPPLEMENTAL SECURITY INCOME—CHILD TEMPORARILY ABSENT FROM PARENTS' HOME DUE TO SCHOOL ATTENDANCE—DEEMING OF INCOME

SSR 82–11

20 CFR 416.1056, 416.1165, and 416.1167(a)

When the claimant's father applied for supplemental security income (SSI) benefits and optional State supplementation on his son's behalf in November 1979, the claimant was 17 years old, unmarried, and attending a school for the emotionally disturbed. The Social Security Administration (SSA) determined that the claimant was a "child" who was living in the same household as his parents. Consequently, the income of his father was counted, as provided by statute, in determining his eligibility for benefits under the SSI program. With the inclusion of his father's income, the claimant was ineligible for both SSI benefits and optional State supplementation because he had excess countable income. When SSA denied the application, the claimant's father appealed. The record shows that, even though the claimant resides at the school, he is still subject to the control of his parents and that he comes home for holidays, school vacations, and occasional weekends. *Held,* under 20 CFR 416.1167(a)(2), the claimant, who meets the definition of a "child" in 20 CFR 416.1056, is living in the same household with his parents because his absences due to attendance at school are temporary. *Further held,* the claimant's income is deemed to include, as provided in section 1614(f)(2) of the Social Security Act (the Act), the income of his father; therefore, the claimant is ineligible for benefits under the SSI program because he has excess countable income.

The general issue to be determined is whether the claimant is eligible for SSI benefits under section 1611 of the Act. The specific issue is whether the claimant's in-

come exceeded that specified by section 1611 of the Act. This depends on the claimant's income (including income deemed to him) and his living arrangements.

The claimant's application for SSI benefits, filed on November 26, 1979, was denied on the grounds that his income (including the income deemed to him from his father's earnings), less applicable exclusions, was in excess of the amount allowed for the receipt of SSI benefits and optional State supplementation.

At the hearing, the 17 year old claimant testified that he has attended a special school for the past three years. He is in ungraded classes, taking courses in mathematics, reading, social studies, and English. He resides at the school, but comes home to the private house of his parents for all holidays. He also comes home for the midwinter recess in February and for occasional weekends. At his home, he has his own room where a bed, dresser, clothes, radio, and television are maintained for him by his parents.

## EXHIBIT B

SECTION 1614(a)(3)(A) (42 U.S.C. 1382c(a)(3)(A)) SUPPLEMENTAL SECURITY INCOME—CONTINUANCE OR CESSATION OF A NON–GRANDFATHEREE'S DISABILITY—A RULING OF NON–ACQUIESCENCE

### SSR 82–49c

### 20 CFR 416.994

*Patti v. Schweiker,* 9th Circuit, 669 F.2d 582 (1982)

The Social Security Administration (SSA) does not acquiesce in the court's decision.

The claimant had been receiving supplemental security income (SSI) benefits as a disabled individual since 1976. In December 1977, SSA informed the claimant that her disability had ceased. After a hearing in March 1978, this determination was reversed by an administrative

law judge (ALJ) and the claimant's benefits were continued. SSA then informed the claimant that her disability had ceased in April 1979, and that determination was affirmed by the district court.

The Court of Appeals, however, reversed SSA's determination. The court found that the determination of disability in 1978 gave rise to a presumption at the hearing in 1979 that the claimant was still disabled. While the opinion acknowledges that this presumption does not shift the burden of proof and the claimant still has the burden of proving her case, the court found that the presumption imposes on the Secretary the burden of going forward with evidence that the claimant's condition has medically improved or otherwise changed. Finding that there was essentially no evidence to support a conclusion that the claimant's condition had changed, the court held that SSA's determination that the claimant's disability had ceased was not supported by substantial evidence.

In essence, the court has concluded that SSA must show that an SSI recipient's condition has improved or otherwise changed before it can determine that the recipient's disability has ceased. SSA disagrees with the court's conclusion that medical improvement or other change is required in these cases.

Regardless of whether medical improvement or other change is or is not shown, under 20 CFR 416.994(b)(1), a determination of cessation is appropriate for an SSI *nongrandfatheree* if the recipient is not disabled under the Federal criteria; i.e., current medical or other evidence shows that the recipient is able to engage in substantial gainful activity.[a]

Since the claimant in *Patti* is an SSI nongrandfatheree, SSA determined that her disability ceased in April 1979 because it found, on the basis of current medical evidence, that she was capable of engaging in substantial gainful activity (i.e.,

a. A showing of medical improvement or other change is also not required in cessation cases

involving an SSI grandfatheree (see SSR 82–100 (Jan.1982)).

she does not meet the Federal definition of disability).

As noted above, under 20 CFR 416.-994(b)(1), issued in August 1980, SSA is not required to show medical improvement or other change in order to terminate SSI disability benefits. However, the final administrative decision in *Patti* was issued prior to August 1980 so that the court's decision in *Patti* was based on an administrative decision involving regulations no longer in effect. Moreover, the Court of Appeals in *Patti* did not even address either the August 1980 regulations or the earlier regulations governing when disability ceases. For these reasons (and since there are other Court of Appeals decisions which do not require a showing of improvement to terminate disability benefits), we believe that *Patti* does not provide a judicial interpretation of the disability regulations which should be followed.

Consequently, SSA *holds* that, even if current medical or other evidence does not show "medical improvement" or other change, the disability of a nongrandfathered SSI recipient is subject to cessation if such evidence shows that the recipient is able to engage in substantial gainful activity (i.e., the recipient does not meet the Federal definition of disability).

EXHIBIT C

Continuance or Cessation

SSR 81–6

(Previously Published as PPS–54)

## TITLES II AND XVI: CONTINUANCE OR CESSATION OF DISABILITY OR BLINDNESS

PURPOSE: To state the policy for determining whether disability or blindness under titles II and XVI continues or ceases.

CITATIONS (AUTHORITY): Sections 221 and 1631 of the Social Security Act; Regulations No. 4, sections 404.1579, 404.1586 and 404.1594; Regulations No. 16, section 416.994.

PERTINENT HISTORY: Under operating guides which have been in effect for approximately 3 years, disability or blindness is found to have ceased when current evidence shows that the individual does not meet the definition of disability or blindness under which his or her claim was allowed; it is not necessary to show that the individual's medical condition has "improved" since the prior determination. However, prior regulations had been interpreted by some to mean that before cessation of disability or blindness could be found, there must have been a positive showing of medical improvement. Such an interpretation precluded a finding of cessation in cases where current evidence showed that the individual was not disabled or blind, but it could not be shown that actual "improvement" had taken place. The regulations have now been revised to clarify this issue.

POLICY STATEMENT: Where the evidence obtained at the time of a continuing disability investigation (CDI) establishes that the individual is not currently disabled or blind, a finding of cessation is appropriate. It will not be necessary to determine whether or how much the individual's condition has medically improved since the prior or favorable determination.

EFFECTIVE DATE: Final regulations covering this policy were effective August 20, 1980, the date of publication in the Federal Register (45 FR 55566).

CROSS–REFERENCES: Program Operations Manual System section 2864; Claims Manual section 6700ff; Disability Operating Manual section 500ff.